**Jim Dwain MORGAN and William Albert Martin, Appellants,**

v.

**The STATE of Texas, State.**

**Nos. 2–93–013–CR, 2–93–014–CR.**

Court of Appeals of Texas,
Fort Worth.

Aug. 31, 1995.

Rehearing Overruled Oct. 19, 1995.

David Greenhaw, Odessa, for appellant.

Patrick J. Fleming, Jennifer Setser Rymell, Weatherford, for appellee.

Before RICHARDS, LATTIMORE and DAUPHINOT, JJ.

## OPINION

RICHARDS, Justice.

Appellants Jim Dwain Morgan and William Albert Martin appeal their convictions in a joint trial by a jury for the offense of possession of marihuana weighing less than two ounces.

Three arguments are advanced on appeal: (1) the trial court erred in not suppressing evidence and allowing its admission at trial; (2) the trial court submitted an improper jury instruction; and (3) the jury selection did not comply with the Texas Government Code.

We affirm.

The critical question presented in appellants' first point of error is whether article I, section 9 of the Texas Constitution provides greater protection than the Fourth Amendment to the United States Constitution in the context of a police officer's entry into a passenger compartment of a vehicle to gain access to its Vehicle Identification Number (VIN). This case involves a search by a law enforcement officer for the VIN located in the doorjamb of appellants' pickup truck. The testimony established that Texas Department of Public Safety Sergeant Bill Cooper, following a routine traffic stop for a speeding violation, opened the door of the pickup truck in which appellants were traveling, without their consent, in an attempt to obtain the VIN. Sergeant Cooper's action followed his unsuccessful attempt to read the only partially visible VIN located on the dashboard of the pickup.

Appellants contend their rights under the Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution were violated, and that the trial court erred in failing to suppress the fruit of an unlawful search.

The Fourth Amendment bars only unreasonable searches and seizures. The reasonableness inquiry is driven by a balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *New York v. Class*, 475 U.S. 106, 118, 106 S.Ct. 960, 968, 89 L.Ed.2d 81, 93 (1986) (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110, 118 (1983)).

The Supreme Court's plurality opinion in *New York v. Class*, 475 U.S. at 106, 106 S.Ct. at 960, 89 L.Ed.2d at 81, controls appellants' claimed Fourth Amendment violation. In

*Class,* officers lawfully stopped a vehicle for traffic violations, following which the driver exited the car. While the driver was talking with one officer, the other officer went to the car to record the VIN to complete the traffic citation. When he did not find the VIN on the doorjamb, he reached into the interior of the car to move some papers obscuring the area on the dashboard where the VIN is located on later model cars. As he did so, the officer saw the handle of a gun protruding from under the front seat. The officer arrested the driver and charged him with criminal possession of a firearm.

The Supreme Court agreed with the New York Court of Appeals that the officer's intrusion into the interior of the car constituted a search. Nevertheless, the Supreme Court ruled the search was reasonable. The Court held the government's interest in requiring and obtaining the VIN is "of the first order," and noted federal law requires that the VIN be placed in plain view. *Class,* 475 U.S. at 111, 106 S.Ct. at 964, 89 L.Ed.2d at 88. The Court specifically held the occupants of a car do not have a reasonable expectation of privacy in either the VIN located on the dashboard or interior doorjamb when stopped for a traffic violation, and issued what appears to be a bright-line rule authorizing a limited search for the doorjamb-mounted VIN whenever the VIN on the dashboard is obscured:

In this case, we must decide whether, in order to observe a Vehicle Identification Number (VIN) generally visible from outside an automobile, a police officer may reach into the passenger compartment of a vehicle to move papers obscuring the VIN after its driver has been stopped for a traffic violation and has exited the car. We hold that, in these circumstances, the police officer's action does not violate the Fourth Amendment.

. . . .

... We hold that this search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed respondent commit two traffic violations. Any other conclusion would expose police officers to potentially grave risks without significantly reducing the intrusiveness of the ultimate conduct—viewing the VIN—which, as we have said, the officers were entitled to do as part of an undoubtedly justified traffic stop.

We note that our holding today does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile. If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it.

*Class,* 475 U.S. at 107, 119, 106 S.Ct. at 962, 968–69, 89 L.Ed.2d at 86, 94.

We find this language as indicating the Court intended to issue a bright-line rule.[1] This interpretation finds additional support

1. In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), in acknowledging that its bright-line decision that the passenger compartment of a vehicle and any containers found therein could be searched if such search was incident to the lawful arrest of the occupant, would apply to fact situations beyond that specifically addressed in that case, the Court noted the importance of formulating a clear rule of law so as to apprise police officers of the scope of their authority.

In her dissenting opinion Justice Dauphinot suggests our opinion improperly "assumes a compelling governmental interest in revealing the VIN" and does not discuss a "less intrusive means" of discovering the VIN. We believe the Supreme Court's opinion in *Class,* which provided a clear rule authorizing such searches, addressed both concerns. Under the rule set forth in *Class,* there is no requirement for an officer to

request the passenger in the vehicle to move the obstruction from the driver's side dashboard. Moreover, we note that were we empowered to modify the Supreme Court's ruling so as to require a police officer, prior to inspecting the doorjamb VIN, to first request any passenger in the car to clear the dashboard VIN, such a rule would have no clear application in the instant case. That is because the "seizure" of which appellants complain is the *odor* of the marihuana emanating from the interior of the vehicle following the opening of the car door to inspect the VIN. Had the officer asked the passenger to roll the window down and then requested him to remove the obstruction of the VIN on the other side of the car, the result would have been the same—the odor, no doubt, would have escaped from the window. Appellants do not contest that once the officer smelled the marihuana, he lacked probable cause to search the car.

in light of Justice Powell's concurring opinion:

> I join in the Court's opinion but write to emphasize that, because of the unique and important governmental interests served by inspection of the Vehicle Identification Number (VIN), an officer making a lawful stop of a vehicle has the right and duty to inspect the VIN. Where the VIN is not visible from outside the vehicle or voluntarily disclosed by the driver, the officer may enter the vehicle to the extent necessary to read the VIN.

*Id.* at 120, 106 S.Ct. at 969, 89 L.Ed.2d at 94 (Powell, J. concurring).

Justice Brennan dissented on this issue, reasoning that congressional laws requiring manufacturers of automobiles to include VINs at various locations should, in no way, control an appellate court's Fourth Amendment analysis. *Id.* at 124, 106 S.Ct. at 971, 89 L.Ed.2d at 97. As noted in Justice Lattimore's dissent in the instant case, Justice Brennan makes a powerful argument as to why the Fourth Amendment should be held to prohibit police conduct such as that occurring in the instant case. While it is tempting to find Justice Brennan's thoughtful analysis to be correct, as a lower appellate court we must be ever mindful that we are constrained to follow the law as decided by the Supreme Court, without regard to our own personal views. Given the Supreme Court's ruling in *Class* addressing this very issue, we hold there was no Fourth Amendment violation in the instant case.

 We now turn to whether the Texas Constitution affords additional protections than that afforded by the Fourth Amendment. In *Autran v. State*, 887 S.W.2d 31 (Tex.Crim.App.1994), the Texas Court of Criminal Appeals determined that the Texas Constitution provides greater protection than does its federal counterpart in the area of police inventory searches of closed containers found in automobile searches. Among the factors considered by the court of criminal appeals and listed as helpful, though not dispositive: (a) textual examination of the constitutional provisions; (b) the Framers' intent; (c) history and application of the constitutional provision; (d) comparable jurisprudence from other states; and (e) the practical policy considerations behind the constitutional provision. *Id.* at 37.

The first factor—textual examination of the constitutional provisions—shows only slight grammatical differences in what otherwise appears to be identical guarantees. The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and no Warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. CONST. amend. IV.

Article I, section 9 of the Texas Constitution states:

> The people shall be secure in their persons, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation.

TEX. CONST. art. I, § 9.

We find no discernable difference between the rights guaranteed in each respective provision as they relate to the issue presented in this appeal. As to the second and third factors—the Framers' intent and the history and application of constitutional provisions—we similarly find no discernable differences in either intent or historical application. *See* Matthew W. Paul and Jeffrey L. Van Horn, Heitman v. State: *The Question Left Unanswered*, 23 ST. MARY'S L.J. 929, 936 (1992). As to the third factor—comparable jurisprudence from other states—we note that in the nine years following the Supreme Court's decision in *Class*, no state appellate court has pronounced its constitution affords more protection than the Fourth Amendment concerning police searches for VINs.

We are left then with only the question of the practical policy considerations for dispa-

rate treatment of the two constitutional provisions.

■ A state appellate court's mere disagreement with a Supreme Court's ruling on an issue of constitutional law is not a sufficient ground to "find" a state constitutional protection. We recognize that the public in general and law enforcement personnel in particular, would be ill served by "Balkanization" of rules of law. In *McCambridge v. State*, 778 S.W.2d 70, 75–76 (Tex.Crim.App. 1989), *cert. denied*, 495 U.S. 910, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990), the court of criminal appeals noted that consistency is the objective of any legal standard and that by establishing "conclusive rule[s] ... immune from the vagaries that invariably accompany diverse factual encounters," law enforcement authorities are provided with distinct and definable boundaries beyond which they cannot legitimately venture. *Id.* at 76. Therefore, while we may personally disagree with the Supreme Court's determination that following a legitimate traffic stop a police officer may "search" the doorjamb of an automobile if the VIN on the dashboard is obscured, thereby opening to inspection areas of the car not otherwise open to public view (or smell), we cannot deny that in *Class*, the Supreme Court has unequivocally pronounced such searches reasonable. Having found no compelling rationale on which to justify interpreting the Texas Constitution as providing any greater protection than our federal constitution in the area of law enforcement searches to locate VINs, we overrule point of error one.

■ In point of error two, appellants complain that the trial court erred in advising the jurors, in its written jury instructions, that a police officer has the right to open the door of a vehicle to obtain the VIN if the VIN located on the dashboard is obscured. The instruction at issue provided:

Now, therefore, bearing in mind the foregoing instructions, if you find from the evidence beyond a reasonable doubt that the motor vehicle in question was stopped by the officer in a bona fide stop for a traffic offense or, for a reasonable suspicion that the driver was driving while intoxicated, and that during the temporary detention and investigation for said suspected driving while intoxicated offense or traffic offense, the motor vehicle identification number in the dash area of the vehicle was in fact obscured, and that officer Cooper opened the vehicle door to obtain the motor vehicle identification number and did smell the odor or marijuana coming from the interior of the vehicle, or after so opening said door, was given consent by the owner of the vehicle, then you may consider the evidence obtained by the search of the vehicle. However, if you do not so find beyond a reasonable doubt or if you have a doubt that officer Cooper's view of the motor vehicle identification number was obscured or that he smelled the odor of marijuana, or that if he did not smell the odor of marijuana, that he was not given consent to search the vehicle by the owner, then you will wholly disregard all evidence recovered in the search of the vehicle, and not consider it as any evidence whatsoever.

Appellant argues "it was up to the jury, under Article 38.23, to determine whether the officer should be allowed to view a VIN number." We disagree.

■ Article 38.23 states that if an issue is raised regarding whether evidence was legally obtained, the trial court must instruct the jury that if it believes, or has a reasonable doubt, that the evidence was obtained legally, then it shall disregard such evidence obtained. A defendant is entitled to this request only when the evidence presented raises an issue of fact as to probable cause, or some other issue, such as consent to search. TEX.CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1995); *Reynolds v. State*, 848 S.W.2d 148 (Tex.Crim.App.1993). Pursuant to article 38.23, the trial judge in the instant case, in pertinent part, instructed the jurors that if they believed the VIN in the area of the dashboard was partially obscured and that the officer opened the door to obtain the VIN contained therein, the evidence obtained as a result of the search could be considered.

As discussed in the previous point of error, in *Class*, the Supreme Court ruled that, as a matter of law, a police officer was entitled to search the doorjamb if the VIN on the dash-

board is not visible from outside the automobile:

> The VIN, which was the clear initial objective of the officer, is by law present in one of two locations—either inside the doorjamb, or atop the dashboard and thus ordinarily in plain view of someone outside the automobile. Neither of those locations is subject to a reasonable expectation of privacy. The officer here checked both those locations, and only those two locations.... 

> We note that our holding today does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile. If the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it.

*Class,* 475 U.S. at 118–19, 106 S.Ct. at 968, 89 L.Ed.2d at 93–94.

Given the Supreme Court's pronouncement that a search by a police officer of the doorjamb of an automobile for a VIN during a traffic stop is reasonable unless the VIN is not visible from the outside of the automobile, the trial court's jury instruction was proper.

Point of error two is overruled.

■■■■ In point of error three, appellants complain the jury array in their case was drawn only from lists of registered voters rather than citizens of the county holding valid Texas drivers' licenses or personal identification cards.

The record reflects the potential jurors for the new term of court beginning January 1, 1993, were drawn from a jury wheel on December 10, 1992. At that time, Parker County did not have a certified list of potential jurors as required under section 62.001 of the Texas Government Code. The computer tape listing the potential jurors was received by Parker County from the Secretary of State; however, the tape was rejected by the district judge because it was not certified by the Secretary of State. TEX.GOV'T CODE ANN. § 62.001(g) (Vernon Supp.1995). The new properly certified tape was not tendered to Parker County in time to draw the names of the prospective jurors from the citizens of the county who held valid Texas drivers' licenses or personal identification cards before the new term of court.

Appellants' challenge to the jury panel was not supported by written affidavit as required by article 35.07 of the Texas Code Criminal Procedure. In addition, appellants did not set forth in writing the specific grounds for the challenge. Under controlling case authority from the Texas Court of Criminal Appeals, we are required to hold this issue has not been preserved for appellate review. *Esquivel v. State,* 595 S.W.2d 516, 523 (Tex.Crim.App.), *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980).

■■■■ Had the issue been preserved we would still be constrained to rule against appellants. In order to be entitled to a reversal for noncompliance with the jury selection procedures set forth in the Texas Government Code an appellant must show that the noncompliance compromised the fairness of his trial. *Lewis v. State,* 815 S.W.2d 560, 563 (Tex.Crim.App.1991), *cert. denied,* 503 U.S. 920, 112 S.Ct. 1296, 117 L.Ed.2d 519 (1992). Appellants do not complain the noncompliance compromised the fairness of the guilt/innocence stage of the trial. Instead, admitting no evidence in the record supports their theory of harm, appellants argue it is "unlikely" a cross-section of all the persons in Parker County holding drivers' licenses would have assessed the punishments assessed in their cases: 120 days' confinement and a fine of $1,500.00 for appellant Morgan and twenty-one days and a fine of $500.00 for appellant Martin. We find that theory far too speculative to convince us that the noncompliance compromised the fairness of the trial. Finally, we note appellants failed to show they were forced to accept objectionable jurors, a prerequisite for a demonstration of harm. *Esquivel,* 595 S.W.2d at 523.

Point of error three is overruled and the trial court's judgments are affirmed.

LATTIMORE, Justice, dissenting.

Jim Dwain Morgan and William Albert Martin (collectively "appellants") were con-

victed by a jury of the offense of possession of marihuana of under two ounces.[1] The jury assessed punishment for Jim Dwain Morgan at 120 days' confinement in the Parker County Jail and a fine of $1,500.00; and for William Albert Martin at twenty-one days' confinement in the Parker County Jail and a $500.00 fine. On appeal, appellants raise three points of error contending that: (1) the trial court erred in not suppressing evidence and allowing its admission at trial; (2) the trial court submitted an improper jury instruction; and (3) the jury selection did not comply with the Texas Government Code.

On February 21, 1992, Department of Public Safety Trooper Pettigrew and Sergeant Cooper were on patrol on Interstate Highway 20 in Parker County, when they observed in the opposing lanes of traffic a pickup truck traveling fifty-three miles per hour in a sixty-five mile per hour zone. The officers turned around, followed the vehicle for five miles, and observed the driver "weave," twice wandering from his lane of travel. When the officers stopped the pickup, the driver, William Albert Martin, met Trooper Pettigrew at the rear of the vehicle. Trooper Pettigrew detected an odor of alcohol and burnt marihuana on Martin, and thus administered field sobriety tests. Meanwhile, Sergeant Cooper, without communicating with Trooper Pettigrew, attempted to check the vehicle identification number ("VIN") on the dashboard of the pickup by looking through the windshield. The VIN was partially concealed by a cloth dash cover because the opening in the cover designed to expose the VIN was not aligned properly with the VIN plate. Without first obtaining permission or otherwise requesting that the dashboard VIN be exposed for inspection, Officer Cooper opened the driver's-side door to check the VIN on the doorjamb. Upon opening the door, Sergeant Cooper likewise detected the smell of marihuana. Jim Dwain Morgan was sitting in the passenger seat of the pickup with his hand on a rolled-up newspaper by his side. Sergeant Cooper observed a plastic bag containing a green leafy substance protruding from within the newspaper. When Sergeant Cooper asked who owned the vehicle, Morgan responded that he did. Sergeant Cooper testified that he then requested and received oral consent to search the vehicle. A plastic bag recovered in the search contained cigarette papers, lighters, and a green leafy substance later identified as marihuana. Both Martin and Morgan were subsequently arrested for possession of marihuana.

The trials of both Morgan and Martin were consolidated. Prior to trial, the trial court denied appellants' motion to suppress evidence found during the search. The cases were tried to a jury and both Morgan and Martin were found guilty. At the punishment phase of the trial, the State introduced two prior convictions against Morgan—one for driving while intoxicated and another for possession of marihuana. No prior convictions were introduced against Martin.

In their first point of error, appellants contend that because there was no probable cause to justify the search of the pickup, the trial court erred in denying their motion to suppress evidence found during that search and allowing its admission at trial. To adequately address this point, it must first be determined whether opening the driver's-side door to inspect the VIN on the doorjamb was a search under the Fourth Amendment of the United States Constitution and, if so, whether that search was unreasonable. If opening the door was reasonable, it must then be determined whether the act of searching the interior of the vehicle, once Sergeant Cooper smelled marihuana after opening the door, was constitutionally permissible under the Fourth Amendment. Finally, if these acts were permissible under the federal constitution, it must be determined whether the search and seizure provisions found in article I, section 9 of the Texas Constitution afford appellants greater protection than the federal counterpart. Because of its potentially controlling scope, the federal constitutional claim will be analyzed first.

1. Act of May 18, 1989, 71st Leg., R.S., ch. 678, § 1, 1989 Tex.Gen.Laws 2230, 2939, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 2.02, 1993 Tex.Gen.Laws 3586, 3709 (current version at Tex.Health & Safety Code Ann. § 481.121 (Vernon Supp.1995)).

The State's intrusion into a particular area cannot result in a Fourth Amendment violation unless the area is one in which there is a constitutionally protected, reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347, 360, 88 S.Ct. 507, 516, 19 L.Ed.2d 576, 587 (1967) (Harlan, J., concurring). The use and physical characteristics of automobiles result in a lessened expectation of privacy, as compared to homes. *Cardwell v. Lewis,* 417 U.S. 583, 590, 94 S.Ct. 2464, 2469, 41 L.Ed.2d 325, 335 (1974). This is not to say that a citizen surrenders all of his Fourth Amendment protections upon entering an automobile. *See Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1979). Nevertheless, automobiles are subject to pervasive regulation, and every operator of a motor vehicle must expect some intrusion into his privacy when the State moves to enforce those regulations. *South Dakota v. Opperman,* 428 U.S. 364, 368, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976).

In *New York v. Class,* 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), the United States Supreme Court addressed the question of whether the inspection of the dashboard and doorjamb VIN locations was a reasonable search under the Fourth Amendment. In *Class,* police officers stopped a vehicle for speeding and for having a cracked windshield. One officer then began to interview the driver, Class, who had exited the car. Class gave the officer his vehicle registration certificate and proof of insurance, but stated he had no driver's license. Meanwhile, the other officer went directly to the car to get the VIN. That officer first opened the door to get the number from the doorjamb location (the only location for the VIN in pre–1969 cars), and not finding the number there, reached inside the car to remove papers from the dashboard to expose the VIN in that location. While doing so, the officer noticed a gun protruding from beneath the seat of the car. Consequently, Class was arrested for possession of the gun. The trial court denied a pre-trial motion to suppress the gun as evidence, but the New York Court of Appeals reversed, holding that in the absence of any justification for the search of Class's car, the search was prohibited. *Id.*

The Supreme Court reversed the New York Court of Appeals, holding that in these circumstances, the police officer's action did not violate the Fourth Amendment because the search was reasonable. In discussing the *dashboard* VIN location, the Court stated that:

> [t]he VIN's mandated visibility makes it more similar to the exterior of the car than to the trunk or glove compartment. The exterior of the car, of course, is thrust into the public eye, and thus to examine it does not constitute a "search." ... [B]ecause of the important role played by the VIN in the pervasive government regulation of the automobile and the efforts by the Federal Government to ensure that the VIN is placed in plain view, we hold that there was no reasonable expectation of privacy in the VIN.

*Class,* 475 U.S. at 114, 106 S.Ct. at 966, 89 L.Ed.2d at 90. The Supreme Court further held that the intrusion into the interior of the vehicle to remove the papers from the dash was a Fourth Amendment search. *Id.* Turning its attention to the reasonableness of the search, the Court noted that Class left the car in order to meet the officers, and "[i]f respondent had stayed in his vehicle and acceded to such a request from the officer [to remove the papers obscuring the dashboard VIN], the officer would not have needed to intrude into the passenger compartment." *Id.* at 115, 106 S.Ct. at 966, 89 L.Ed.2d at 91. As further justification for the search, the Court stated that "[i]n light of the danger to the officers' safety that would have been presented by returning respondent immediately to his car [because of the gun under the seat], we think the search to obtain the VIN was not prohibited by the Fourth Amendment." *Id.* at 116, 106 S.Ct. at 967, 89 L.Ed.2d at 92. The Court also recognized that:

> [t]he VIN, which was the clear initial objective of the officer, is by law present *in one of two locations*—either inside the doorjamb, or atop the dashboard and thus ordinarily in plain view of someone outside the automobile. *Neither of those locations*

*is subject to a reasonable expectation of privacy.* The officer here checked both those locations, and only those two locations.... He did not even intrude into the interior at all until after he had checked the doorjamb for the VIN.

. . . .

We note that our holding today does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile. If the VIN is in plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it. *Id.* at 118–19, 106 S.Ct. at 968–69, 89 L.Ed.2d at 93–94 (emphasis added).

In the instant case, Sergeant Cooper first attempted to read the dashboard-mounted VIN. This act, by itself, was not a search because there was no privacy interest in that location due to its visibility from the exterior of the vehicle. However, because the VIN was partially obscured, the officer then opened the driver's-side door to read the VIN from the secondary doorjamb location. Sergeant Cooper did not first ask the driver, nor the passenger (the owner) of the vehicle (who remained in the truck in plain view) to move the obstruction. According to Sergeant Cooper, the doorjamb VIN location was the sole object of this initial intrusion. These facts are distinguishable from the facts in *Class.* The presence of a passenger in the vehicle, who could have moved the dash cover if asked, and the lack of any safety concern are factors critical to a determination of this case. Accordingly, Sergeant Cooper's action of opening the vehicle door to read the door jamb VIN location, after first unsuccessfully trying to read the dashboard VIN location, was a search within the meaning of the Fourth Amendment.

The evidence that appellants seek to suppress was a bag of marihuana partially concealed on the seat of the truck. Sergeant Cooper first became aware of the possible presence of marihuana when he opened the truck door, smelled the odor of burning marihuana, and saw a plastic bag possibly containing that drug. Sergeant Cooper then searched the truck and confiscated the marihuana. There is no question that this act is a search within the meaning of the Fourth Amendment. However, the Fourth Amendment by its terms only prohibits "unreasonable" searches. Reasonableness is determined by balancing the need for the search against the invasion which the search entails. *Camara v. Municipal Court,* 387 U.S. 523, 535–36, 87 S.Ct. 1727, 1734–35, 18 L.Ed.2d 930, 939 (1967). In justifying a particular intrusion, the police must be able to point to specific and articulable facts, which taken together with rational inferences from those facts, justifiably warrant that intrusion. *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889, 906 (1968). Generally, this balancing indicates that searches must be conducted pursuant to a warrant based on probable cause. *United States v. Ventresca,* 380 U.S. 102, 105–09, 85 S.Ct. 741, 744–46, 13 L.Ed.2d 684, 686–89 (1965). However, where the object of the search is a weapon, the weighty interest of police safety justifies warrantless searches based only on a reasonable suspicion of criminal activity, despite their substantial intrusiveness. *Terry,* 392 U.S. at 24–25, 88 S.Ct. at 1881–82, 20 L.Ed.2d at 907–08. When police safety is less directly served by the search, more than objectively justifiable suspicion is necessary to make the intrusion legal. *Class,* 475 U.S. at 117, 106 S.Ct. at 967, 89 L.Ed.2d at 92; *Pennsylvania v. Mimms,* 434 U.S. 106, 107, 98 S.Ct. 330, 331, 54 L.Ed.2d 331, 334–35 (1977) (per curiam).

A warrantless search and seizure can be justified under four exceptions: the plain view doctrine, consent, the emergency doctrine, and the automobile exception. *U.S. v. Armendariz–Mata,* 949 F.2d 151, 153–54 (5th Cir.1991), *cert. denied,* 504 U.S. 945, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992); *Stewart v. State,* 681 S.W.2d 774, 777 (Tex.App.— Houston [14th Dist.] 1984, pet. ref'd) (op. on reh'g). A search warrant is unnecessary where there is probable cause to search an automobile stopped on highway; a vehicle is mobile, occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970); *Cantu v. State,* 754

S.W.2d 512, 514 (Tex.App.—San Antonio 1988, no pet.). Permissible searches under the automobile exception must be based both upon probable cause to believe that a crime has been committed, and probable cause to believe that contraband or other evidence that the government could properly seize is contained in the vehicle. *U.S. v. Hernandez,* 901 F.2d 1217, 1220 (5th Cir.1990). Distinctive odors, detected by those qualified to know them, may alone establish probable cause for a search. *U.S. v. McKeever,* 906 F.2d 129, 132 (5th Cir.1990), *cert. denied sub nom. Newman v. U.S.,* 498 U.S. 1070, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991).

Here, Sergeant Cooper first attempted to read the VIN through the windshield from outside the car. Because part of the VIN was covered by the dashboard cover, Sergeant Cooper then resorted to the second VIN location, on the driver's door frame. When he opened the door, the smell of marihuana immediately became apparent. At this point, Sergeant Cooper for the first time had probable cause to believe that the offense of possession of marihuana had been committed, and that the contraband could be contained in the vehicle. The United States Supreme Court in *Class* held that an officer was justified in opening a vehicle door to obtain a VIN when the dashboard VIN was obscured and the driver was not in the car. *Class,* 475 U.S. at 115, 106 S.Ct. at 966, 89 L.Ed.2d at 91.

The Supreme Court concluded that the officer in *Class* "did not even intrude into the interior at all until after he had checked the doorjamb for the VIN." *Class,* 475 U.S. at 118–19, 106 S.Ct. at 968, 89 L.Ed.2d at 93. Here the location of the VIN on the doorjamb of the vehicle driven by one of the appellants is located so that it cannot be read by the officer or anyone else unless at least their head is inside the car and the door is open wide enough to admit a portion of the upper body of the viewer. It is not physically possible to check to see if the VIN placard is in place on the doorjamb and not intrude physically into the vehicle. It is not possible to do so without opening the car door to a substantial degree. Significantly, the numerals and letters of a VIN on the forward side of the doorjamb can not be read unless the head of the reader is inside the door opening. It is almost ludicrous to expect the officer to not place a portion of his upper body along with his head in the open doorway while reading the VIN plate. In addition, in the case at hand the passenger in the front seat remained in the car and was available to remove any impediment to a view of the dashboard mounted VIN if so requested. No such request was made of him. This alone is enough to distinguish this case from the fact situation related by the Supreme Court in *Class.*

In *Class,* if the Supreme Court majority opinion had not concluded, "If the VIN is in plain view of someone outside the vehicle there is no justification for governmental intrusion into the passenger compartment to see it," one would conclude from the majority opinion that the VIN number, wherever located, is subject to intrusive police view, regardless of the circumstances. *Class,* 475 U.S. at 119, 106 S.Ct. at 968, 89 L.Ed.2d at 93–94.

At least we know that the interior of a car has Federal Constitutional protection against unreasonable searches.

Whether, hypothetically, if the automobile operator allows the dash mounted VIN to be obscured he has lost all U.S. Constitutional protection remains to be seen.

Appellants also assert that Sergeant Cooper's actions constituted an unreasonable search under article I, section 9 of the Texas Constitution. Most of the Texas cases addressing search and seizure law have reached their holdings based on federal constitutional grounds. Even where Texas courts have addressed Texas constitutional guarantees related to search and seizure, those courts have found the Texas and federal provisions co-extensive. *See Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App.1991). However, the court of criminal appeals has held that article I, section 9 of the Texas Constitution is not necessarily coterminous with the Fourth Amendment of the federal constitution. *Id.* at 690; *see also Autran v. State,* 887 S.W.2d 31, 37 (Tex.Crim.App.1994) (holding that article I, section 9 of the Texas

Constitution provides greater protection than its federal counterpart).

Under article I, section 9, a determination as to whether a search meets probable cause requirements requires an inquiry into whether an individual, by his conduct, exhibits an actual, subjective expectation of privacy and whether that expectation is one that society is prepared to recognize as reasonable. *Kann v. State*, 694 S.W.2d 156, 159 (Tex. App.—Dallas 1985, pet. ref'd). Probable cause for a search exists where the facts and circumstances within the knowledge of the officer on the scene, and of which the officer has reasonably trustworthy information, would lead a person of reasonable caution and prudence to believe that he or she will find the instrumentality of a crime or evidence pertaining to a crime. *Brown v. State*, 481 S.W.2d 106, 110 (Tex.Crim.App.1972); *Ackenback v. State*, 794 S.W.2d 567, 572 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). The inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause. *Brown*, 481 S.W.2d at 110; *Ackenback*, 794 S.W.2d at 572. The reviewing court must look to the "totality of circumstances" to determine if there exists a substantial basis for concluding that probable cause existed at the time of the questioned action. This test is used for both warrantless and warrant seizures of persons and property. *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988).

Even if an officer has probable cause to conduct a warrantless search, an exceptional situation is still necessary in order to uphold the validity of the search. *Gonzalez v. State*, 588 S.W.2d 355, 360 (Tex.Crim.App. [Panel Op.] 1979); *Kann*, 694 S.W.2d at 160. However, Texas has recognized the legality of warrantless searches of vehicles under the "vehicle exception," "exigent circumstances," and "plain view" theories. *Ackenback*, 794 S.W.2d at 571–72; *Spears v. State*, 801 S.W.2d 571, 575 (Tex.App.—Fort Worth 1990, pet. ref'd). Under Texas law, the determination of whether evidence should be suppressed because it was obtained by an unconstitutional search or seizure is to be made by the trial court, and if the issue is fairly raised, the jury should be instructed to disregard any evidence that it believes was obtained by unconstitutional means. TEX. CODE CRIM.PROC.ANN. art. 38.23(a) (Vernon Supp.1995).

The only Texas case involving the inspection of a vehicle's VIN is *State v. Hammitt*, 825 S.W.2d 131 (Tex.App.—Beaumont 1992, pet. ref'd). In that case officers came upon a stopped vehicle with a license plate number not registered in the police computers. The officer approached the vehicle to read the VIN from the windshield location, and saw contraband inside the car in plain view. That court held the trial court properly admitted the evidence, and stated that "[t]hese articulable, suspicious circumstances permitted [the officer] to, *at the very least*, approach the vehicle and radio-in the vehicle identification number in order to ascertain whether or not the law had been violated." *Hammitt*, 825 S.W.2d at 134. Furthermore, the appellant in *Hammitt* only asserted a federal constitutional right, and the opinion specifically states that it does not address whether the Texas Constitution provides any greater rights. Thus *Hammitt* does not reach the issue of whether opening the vehicle door to inspect a doorjamb VIN, when the windshield VIN is obscured, is a search under the Texas Constitution. *Id.* In briefing their article I, section 9 claim, appellants have not cited us to any case, other than *Heitman*, which suggests that Texas constitutional guarantees against unreasonable search and seizure are any greater, or must be analyzed any differently, than the corresponding federal constitutional claim. Nevertheless, *Heitman* compels us to independently analyze this claim. *Heitman*, 815 S.W.2d at 690.

Thus, we must first determine, as a matter of law, whether appellants had a privacy interest in the doorjamb where the VIN was located. If we find, as did the United States Supreme Court, that there is no privacy interest in the doorjamb VIN location when the dashboard VIN is obscured, then we can not hold that a search occurred with the opening of the door. If on the other hand, we find that a privacy interest in the door

jamb does exist, then the question of reasonableness of the search must be decided based on a "totality of circumstances" test.

The United States Supreme Court, under the Fourth Amendment, justified its holding by pointing to the minimal privacy interest in automobiles generally, and the pervasive regulatory scheme created around the VIN. While we must follow this precedent to determine any federal constitutional grounds, we should decline to accept the Supreme Court's rationale in determining whether appellants had a privacy interest in the vehicle's interior doorjamb (or more appropriately the area obscured by a closed automobile door) on Texas constitutional grounds.

A VIN is not the Holy Grail. Determining a vehicle's precise identity does not justify searching for the VIN, wherever it might be located. This reasoning is most prominently articulated by Justice Brennan's dissent in *Class:*

> However, even assuming that respondent had no reasonable expectation of privacy in the VIN, why is this relevant to the question we decide? [The searching officer] did not look for the VIN from outside of respondent's vehicle, but *searched* the car without respondent's consent in order to locate the VIN. By focusing on the object of the search—the VIN—the Court misses the issue we must decide: whether an interior *search* of the car to discover that object was constitutional. Regardless of whether he had a reasonable expectation of privacy in the VIN, respondent clearly retained a reasonable expectation of privacy with respect to the area searched by the police—the car's interior. As the court below noted, "[t]he fact that certain information must be kept, or that it may be of a public nature, does not automatically sanction police intrusion into private space in order to obtain it."

*Class,* 475 U.S. at 124, 106 S.Ct. at 971, 89 L.Ed.2d at 97 (Brennan, J., concurring in part and dissenting in part). Moreover, the Federal Highway Administration, in promulgating the regulation which provided for a VIN, provided a protection for the area of a vehicle that is revealed by opening its door:

> This provision was also redrafted to make it clear that the number must be readable from a position outside the vehicle without moving any part of the vehicle. This precludes placing the number in a location such that, in order to read it, *a door*, trunk lid or other portion of the car's body must be opened.

33 Fed.Reg. 10208 (1968) (emphasis added). Consequently, there is no reason to provide the police with access to the interior of the car, absent probable cause to search it.

Officer Cooper's act of opening the door to view the doorjamb VIN was a search under the Texas Constitution. The door of a vehicle, just as the door of a home, is the barrier that maintains the privacy of the space within. The doorjamb was not visible from the exterior of the vehicle until the door was opened. Moreover, because the VIN on the doorjamb faces forward, the door must be opened completely to examine this VIN. Opening the door exposes the entire interior, and not just the doorjamb, to full view (and smell) from the exterior.

While the object of the search may be a factor to consider in the question of whether the search is reasonable, it should not be considered a factor in determining whether a search has occurred at all. The Supreme Court in *Class* only found a search when the officer reached inside the car. This ignores the fact that searches may be conducted by listening, smelling, and viewing, as well as physically rifling, through the constitutional protected space. *See Katz,* 389 U.S. at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583 (police use of listening device attached to outside of phone booth an unreasonable search). The appellants had a privacy interest in the interior of their vehicle, including the portion of the doorjamb which was only exposed when the car door was opened by the officer, consequently, Officer Cooper's act of opening the door of the vehicle was a search under article I, section 9 of the Texas Constitution.

The court today examines the five factors considered by the court of criminal appeals in *Autran.* With respect to article I, section 9, the first three factors enable the examiner to determine only the possibility that this section provides a greater protection than the

Fourth Amendment—an issue that was settled in *Autran.* Using an *Autran* analysis, only the remaining two factors, "Comparable Jurisprudence" and "Practical Policy Considerations," are dispositive as to whether a particular protection is provided by the Texas Constitution. The court today notes that there is no comparable jurisprudence concerning searches for the determination of VIN numbers. Consequently, the only factor which remains to be examined is the question of practical policy considerations.

Our court today relies on the Supreme Court's holding in *Class* to find that there was no reasonable expectation of privacy in the VIN located inside the doorjamb of a car. *Class,* 475 at 118, 106 S.Ct. at 968, 89 L.Ed.2d at 93. It fails to find a compelling rationale for acknowledging a greater privacy protection in article I, section 9. Yet the only way to examine the VIN on the doorjamb of the car is to open a device that is provided with a lock designed in part to provide just such privacy. The compelling rationale for such a privacy protection is that once we close the door to our automobiles, there is an expectation that nobody will open those doors without our permission, or without a compelling reason.

For rescue personnel, this compelling reason is the preservation of life. For police officers, this compelling reason is probable cause in its numerous forms, or the safety of the officers in question. In this case, no evidence has been advanced to indicate that the officers had reason to fear for their safety. It is possible or even likely that the officers could have determined probable cause for a search in this case, or that they would have been able to search the car as a consequence of incarcerating the driver and/or owner. However, rather than wait for either of these circumstances to evolve, they first searched the car, and only by doing so, developed a different probable cause for the search.

Consequently, on these facts, the search was unreasonable. There was no probable cause to believe that the vehicle was stolen, or reason to believe that appellants intended to obscure the VIN to hide evidence of theft. The presence of the dashboard cover, which Officer Cooper pointed to as justification for looking inside the car for the VIN, justifies not even a faint suspicion that the vehicle may be stolen. There is no statutory or regulatory basis providing for inspection of concealed or interior mounted VIN's. Clearly, the dashboard location was mandated to allow VIN inspection without a search, but it does not follow that all VIN locations can be inspected without probable cause justifying the search. Nor did Sergeant Cooper, at the time he opened the door, have any reason to believe that contraband or evidence of a crime was contained within the truck.

This is not a situation as in *Hammitt,* where there were articulable facts indicating that the car might be stolen, justifying the inspection of the VIN. Nor is this case like *Class,* where no one was in the vehicle when the search occurred. Here, the truck's seat was occupied (by the owner) when the officer opened the door. Also, this case does not involve any issue of police safety, as did *Class.*[2] Thus, the main reasons for the Supreme Court's conclusion that the *Class* search was reasonable are not present in this case.

The dashboard of vehicles is often the repository of paper or other items which may temporarily obscure the windshield visible VIN. In most cases, these items can be removed by the owner, at the officer's request, without the necessity of a search. Here, nothing prevented Sergeant Cooper from asking for the dashboard VIN to be uncovered. To be sure, there may be situations where the officer's safety may be involved, as in *Class,* or where the facts suggest a purposeful obscuring of the windshield VIN. In these cases, the "totality of circum-

---

2. Even if there was a gun found in the search, we do not believe that an object found in a search can justify the fact that the search was conducted without probable cause. Only when the police have a reasonable suspicion that the vehicle contains a weapon within reach of the defendant may there be justification for a weapon search without full probable cause. *Terry,* 392 U.S. at 24–25, 88 S.Ct. at 1881–82, 20 L.Ed.2d at 907–08. Thus, the Supreme Court's reasoning appears to be flawed on this point, which was one of its main reasons for holding that the search was reasonable.

stances" test can be used to determine whether a search, in the form of opening the door to view the doorjamb VIN, is reasonable. The police should not open a vehicle door on the scant excuse that the officer could not see all of the dashboard VIN, especially where it would have been possible, without any danger to the police, to have the obscuring material removed by the passenger/owner, who was already in the truck. Point of error one should be sustained.

Given this disposition of point of error one, points of error two and three are not addressed.

I dissent, the judgment of the trial court should be reversed.

DAUPHINOT, Justice, dissenting.

Because the majority relies on the law of the State of New York in upholding the search in the instant case without showing that the law of Texas would compel a similar or identical result, I respectfully dissent.

The United States Supreme Court upheld the search in *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986) after the officers had lawfully stopped a vehicle that was speeding and had a cracked windshield, both violations of New York law. The officer could not complete the traffic citation without recording the vehicle identification number (VIN). Additionally, while federal regulation, 49 C.F.R. § 571.115 (1984), requires that manufacturers *place* the VIN in plain view of someone outside the automobile, New York statute authorizes officers to demand that drivers reveal their VIN. The federal regulation addresses the manufacturer. New York statute addresses the vehicle owner.[1] In *Class*, the driver exited the vehicle. The officer, therefore, reached into the interior of the car to move some papers which obscured the VIN on the dashboard. As he did so, he saw the handle of a gun protruding from under the front seat. The Supreme Court agreed that the officer's intrusion into the interior of the car constituted a search, but also found that the govern-

ment's interest in obtaining the VIN was "of the first order." *Id.* at 118, 106 S.Ct. at 968, 89 L.Ed.2d at 93. The Court further found that the officer's actions in moving the papers on the car's dash to reveal the VIN were "no more intrusive than necessary" to locate the VIN. *Id.*

In the case *sub judice*, the majority does not suggest that any Texas law required the officers to record the VIN when the pickup truck in which Appellants were travelling was stopped for suspicion of driving while intoxicated. The record does not reflect that the officers suspected the pickup was stolen. The record reflects no compelling interest in seeking out the VIN. Consequently, if there was no compelling governmental interest in recording the VIN, there was no need to intrude into the vehicle to search it out.

Even accepting *arguendo* a conclusion that there was a need to record the VIN, the least intrusive manner of moving the fabric which partially covered the VIN was to ask the passenger, who was still seated in the car, to pull back the fabric so that the officer could clearly view the VIN. The majority suggests that the officer is not required to ask the passenger to move the obstruction and that even if the officer had asked the passenger to do so, he would have discovered the damning odor when the passenger rolled down the window. The Supreme Court emphasized the intrusion in *Class* was not unlawful because "[t]he search was focused in its objective and no more intrusive than necessary to fulfill that objective." *Id.* The Court points out that if the driver (there was no passenger) had stayed in his vehicle and acceded to the officer's request to remove the papers obscuring the VIN, the officer would not have been justified in intruding into the passenger compartment. *Id.* at 115, 121, 106 S.Ct. at 966, 970, 89 L.Ed.2d at 91, 95.

In the case *sub judice* the officer's search was more intrusive than necessary. No intrusion was necessary because the passenger remained in the vehicle. Nor is there any evidence, as the majority suggests, that he

---

1. The record does not reflect any request by the State that judicial notice be taken of the federal regulation or that the trial judge did so without request.

Even though the record is silent on this issue, for purposes of this dissent, I assume 49 C.F.R. § 571.115 (1984) was properly before the trial court.

would have had to roll down his window in order to talk to the officer. Even if he had rolled down the window, the suggestion of inevitable discovery of the odor marijuana does not salvage the search. The inevitable discovery rule has never been adopted by Texas.

The majority is correct. There is no reasonable expectation of privacy in the VIN. There is, however, a reasonable expectation of privacy in the interior of one's vehicle. Similarly, a person may have no reasonable expectation of privacy in one's facial features. Walking into your own home does not give the government the right to search the home merely because you have no expectation of privacy in your facial features.

Because the majority assumes a compelling governmental interest in revealing the VIN and because the majority does not discuss a less intrusive means of discovering the VIN, I respectfully dissent.

