COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-475-CR
 
THE STATE OF TEXAS           
           
           
           
           
       
STATE
V.
JAMES CHRISTOPHER HUNTER       
           
           
           
        APPELLEE
------------
FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY
------------
OPINION
------------
I. Introduction
The State appeals from the trial court's order suppressing less than
two ounces of useable marijuana seized from appellee James Christopher Hunter's
truck after he was stopped for a missing front license plate. See
Tex. Code Crim. Proc. Ann. art. 44.01(5) (Vernon Supp. 2003). In five points,
the State argues that the search was constitutionally sound and that, in any
event, Hunter consented to the search of his truck. The determinative issue in
this appeal is whether the State met its burden to establish by clear and
convincing evidence that Hunter's consent was voluntary. Because we must defer
to the trial court's implied historical fact findings underpinning this issue,
we cannot conclude that the trial court abused its discretion in granting
Hunter's motion to suppress. Accordingly, we will affirm the trial court's
suppression ruling.
II. Background Facts
On March 19, 2001, Grapevine Police Officer Jason Keller was running a
stationary radar facing southbound traffic on Road 2499. He observed Hunter's
truck traveling northbound and saw that it did not have a front license plate.
Officer Keller drove up behind Hunter's vehicle, turned on his blue and red
lights, and activated the video camera mounted on his patrol car. The video tape
shows that Road 2499 is curbed and that a fence runs along the right side of the
road.
Hunter continued to drive approximately half a mile, but turned right
and stopped at the first opportunity. The road that Hunter turned right onto
appears on the video tape to be under construction. There is a break in Road
2499's curb, and the road to the right is curbed where it meets Road 2499. The
road to the right itself, however, is dirt and has deep ruts in it. Officer
Keller pulled his squad car in directly behind Hunter's truck, blocking Hunter
in.
Officer Keller testified that when he approached Hunter and asked for
his driver's license, Hunter "appeared to be a little bit nervous, and his
speech was somewhat nervous. He avoided eye contact." Officer Keller asked
Hunter for his driver's license and proof of insurance, and Hunter responded,
"Sure, sorry I drove so far -- I just kinda -- I didn't want to . . .
." Before Hunter could finish, Officer Keller interrupted him saying,
"That's fine." Hunter provided his driver's license to Officer Keller.
Officer Keller asked Hunter if he was aware his truck was missing its front
license plate and told Hunter he would just issue him a warning as long as
everything checked out.(1)
Hunter did not have red or glassy eyes. Officer Keller did not smell
any odor or see anything suspicious in or about Hunter's truck. Officer Keller
took Hunter's license, returned to his patrol car, and ran Hunter's license to
determine if any outstanding warrants existed for Hunter's arrest. Finding no
outstanding warrants, Officer Keller walked back to Hunter's truck.
At this point, the video tape shows that Officer Keller handed
something to Hunter through the open driver's side window, shined his flashlight
into the interior of the truck, and asked Hunter, "I know you said it took
you a while to pull over and everything like that -- you don't have anything
illegal in the car, do you?" When Hunter responded, "No," Officer
Keller said, "You don't mind if I take a quick look, do you?" Hunter
said, "Sure." Officer Keller told Hunter to stand at the front of the
truck, "fac[ing] those concrete barrels." Officer Hunter found less
than two ounces of marijuana in the truck and arrested Hunter. The trial court
granted Hunter's motion to suppress.
III. Standard of Review
At a suppression hearing, the trial judge is the sole trier of fact and
judge of the credibility of the witnesses and the weight to be given their
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim.
App. 2000); Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). Thus, the trial court may disbelieve any portion of a
witness's testimony, even if the testimony is uncontroverted. Ross,
32 S.W.3d at 855.
In reviewing the trial court's decision, an appellate court does not
engage in its own factual review. Romero, 800 S.W.2d at
543. Instead, we give almost total deference to the trial court's rulings on (1)
questions of historical fact and (2) application-of-law-to-fact questions that
turn on an evaluation of credibility and demeanor. Johnson v.
State, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In the absence of
explicit findings, we assume that the trial court made whatever appropriate
implicit findings the record supports. Ross, 32 S.W.3d at
855-56; Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex.
Crim. App. 2000). The voluntariness-of-consent issue is a mixed question of law
and fact. See Vargas v. State, 18 S.W.3d 247, 253 (Tex.
App.--Waco 2000, pet. ref'd).
Here, at the suppression hearing, the State presented the testimony of
the arresting officer, Officer Keller, the video tape of the stop recorded from
the video camera mounted in Officer Keller's patrol car, and a map showing that
the stop occurred in Denton County. This evidence, if believed by the trial
court, could have been sufficient for the trial court to conclude that Hunter's
consent to the search was voluntary. See, e.g., Vargas, 18
S.W.3d at 252. The trial court, however, expressly disbelieved portions of
Officer Keller's testimony(2) and impliedly
disbelieved other portions. Thus, we review the voluntariness-of-consent issue
under the second Guzman category: an almost total
deference to the trial court's ruling. Ross, 32 S.W.3d at
856; Guzman, 955 S.W.2d at 89; cf. Vargas,
18 S.W.3d at 253 (applying the third Guzman category, a de
novo review with deference to the trial court's historical facts, when the trial
court denied the suppression based on uncontroverted
facts). Moreover, if the trial judge's decision is correct on any theory of law
applicable to the case, we will sustain the trial judge's decision. Ross,
32 S.W.3d at 855-56.
IV. The Voluntariness of Hunter's Consent
The State's fifth and sixth points claim that the trial court erred by
granting Hunter's motion to suppress because an officer does not need reasonable
suspicion to request consent to search and because Hunter's consent to the
search of his truck was valid. We agree that an officer may request permission
to search even absent reasonable suspicion of criminal activity. Florida
v. Royer, 460 U.S. 491, 497-98, 103 S. Ct. 1319, 1323-24 (1983); Johnson
v. State, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). The fact that an
officer may request permission to search a vehicle absent reasonable suspicion,
however, does not answer the controlling question in this appeal--whether
Hunter's consent to Officer Keller's search was voluntary.(3)
We now turn to that issue, the State's sixth point.
The Fourth Amendment guarantees people the right to be "secure in
their persons, houses, papers, and effects, against unreasonable searches and
seizures." U.S. Const. amend. IV. As a result, searches made without
warrant are generally per se unreasonable. Mendoza v. State,
30 S.W.3d 528, 531 (Tex. App.--San Antonio 2000, no pet.). When a search without
a warrant is made, the State bears the burden to show that the search falls
within one of the narrow exceptions to the warrant requirement in order for the
search to be constitutionally permissible. Id. A
warrantless search and seizure can be justified under four exceptions: the plain
view doctrine, consent, the emergency doctrine, and the automobile exception. U.S.
v. Armendariz-Mata, 949 F.2d 151, 153-54 (5th Cir. 1991), cert.
denied, 504 U.S. 945 (1992); Morgan v. State, 906
S.W.2d 620, 629 (Tex. App.--Fort Worth 1995, pet. ref'd), cert.
denied, 519 U.S. 865 (1996).
To show that the search was made with the property owner's consent and
trigger the consent exception to the warrant requirement, the State must prove
by clear and convincing evidence, based on the totality of the circumstances,
that the defendant gave consent freely and voluntarily.(4)
Reasor v. State, 12
S.W.3d 813, 818 (Tex. Crim. App. 2000); Meeks v. State,
692 S.W.2d 504, 509 (Tex. Crim. App. 1985). If consent is obtained through
duress or coercion, whether actual or implied, that consent is not voluntary. Schneckloth
v. Bustamonte, 412 U.S. 218, 248-49, 93 S. Ct. 2041 (1973); Allridge
v. State, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), cert.
denied, 510 U.S. 831 (1993).
"Voluntariness" goes beyond the literal meaning of "a
knowing choice." Reasor, 12 S.W.3d at 817. Unless a
person is unconscious or incapacitated, all statements made could be considered
"voluntary in the sense of representing a choice of alternatives." Id.
Under this view, even physically-forced consent would be voluntary because, in
theory, the suspect had a choice--either consent to the search or be beaten. Id.
On the other hand, we do not ask whether the consent would have been given
"but-for" the police actions or inquiries. Under this view,
"virtually no statement would be voluntary because very few people give
incriminating statements in the absence of official action of some kind." Id.
In determining whether a defendant's will was overborne in a particular
case, trial courts must assess the totality of all the surrounding
circumstances--both the characteristics of the accused and the details of the
interrogation. Id. at 818; see also Carmouche,
10 S.W.3d at 331; Meeks, 692 S.W.2d at 510; White
v. State, 21 S.W.3d 642, 645 (Tex. App.--Waco 2000, pet. ref'd). By looking
at the circumstances leading up to the search, the reaction of the accused to
pressure, and any other factor deemed relevant, a trial court can determine
whether the statement of consent was given voluntarily. Reasor,
12 S.W.3d at 817.
Some relevant factors in determining the voluntariness issue are the
youth of the accused, the education of the accused, the intelligence of the
accused, the constitutional advice given to the accused, the length of the
detention, the repetitiveness of the questioning, and the use of physical
punishment. Id. at 818. Additionally, testimony by law
enforcement officers that no coercion was involved in obtaining the consent is
evidence of the consent's voluntary nature. Martinez v. State,
17 S.W.3d 677, 683 (Tex. Crim. App. 2000). A police officer's failure to inform
the accused that he can refuse consent is a factor to consider in determining
the voluntariness of consent; however, the absence of such information does not
automatically render the accused's consent involuntary. Johnson
v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002). Nor is consent
rendered involuntary merely because the accused is under arrest. Id.
By the same token, consent is not established by showing no more than
acquiescence to a claim of lawful authority. Carmouche, 10
S.W.3d at 331.
Hunter's motion to suppress challenged the warrantless search of his
truck under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United
States Constitution; Article I, sections 9, 10, and 19 of the Texas
Constitution; and articles 1.04, 1.05, and 1.06 of the Texas Code of Criminal
Procedure. U.S. Const. amends. IV, V, VI, XIV; Tex. Const. art. I §§ 9, 10,
19; Tex. Code Crim. Proc. Ann. arts. 1.04, 1.05, 1.06 (Vernon 1977). The State
stipulated that the search of Hunter's truck was a warrantless search. Thus, the
State bore the burden to show that the search fell within one of the narrow
exceptions to the warrant requirement. Mendoza, 30 S.W.3d
at 531.
The State chose to proceed on the ground that the search of Hunter's
truck was valid because Hunter consented to it. Hunter raised the validity of
the search under the Texas Constitution, so the State was required to prove the
voluntariness of Hunter's consent by clear and convincing evidence. See
Carmouche, 10 S.W.3d at 331. As we previously mentioned, at the suppression
hearing, the State presented the testimony of the arresting officer, Officer
Keller, the video tape of the stop recorded from the video camera mounted in
Officer Keller's patrol car, and a map showing that the stop occurred in Denton
County. The State, however, asked Officer Keller only one question concerning
Hunter's consent to the search: "Mainly, did he give consent for you to
search the vehicle?" Officer Keller answered, "Yes." The defense
then asked Officer Keller whether, if Hunter had not consented to the search, he
would have been free to leave. Officer Keller again responded affirmatively.
This is the extent of the testimony in the record concerning the voluntariness
of Hunter's consent. The video tape of the stop corroborates Officer Keller's
version of the events, and the map is not relevant to the consent issue.
After considering the suppression hearing evidence, the trial court
granted Hunter's motion to suppress. The trial court recognized that the State
was asserting the consent exception to the warrant requirement, expressly found
that Hunter was not free to leave prior to the search, and granted the motion to
suppress. The record reflects that Hunter was present at the suppression
hearing. Thus, the trial court had the opportunity to view the characteristics
of Hunter, including his age and maturity level. The trial court had the
opportunity to observe Hunter's demeanor and general intelligence range. The
trial court also had the opportunity to view Officer Keller's demeanor, volume
of voice, appearance, and credibility. The record reflects that no
constitutional advice was offered to Hunter prior to the search, nor did Officer
Keller tell Hunter that he was free to leave or free to decline to consent to
the search of his truck. In fact, the trial court found that Hunter was not free
to leave because Officer Keller's car was blocking him in, preventing his exit
onto Road 2499. The record contains no evidence of repetitive questioning,
lengthy questioning, or the use of physical punishment to force consent.
Deferring, as we must, to the trial court's credibility determinations
and to the historical facts impliedly found by the trial court when it granted
Hunter's motion to suppress, we cannot hold that the trial court abused its
discretion by concluding either that Hunter's consent was not voluntary or, as
is more probable, by concluding that the State simply failed to meet its burden
of establishing the voluntariness of Hunter's consent by clear and convincing
evidence. Accord Carmouche, 10 S.W.3d at 333 (holding
consent was given involuntarily when a reasonable person would not have felt
they had the choice to withhold consent to search); Reyes-Perez
v. State, 45 S.W.3d 312, 315-19 (Tex. App.--Corpus Christi 2001, pet. ref'd)
(reversing trial court's suppression ruling because State failed to prove
voluntariness of consent to search by clear and convincing evidence). Because
the trial court's decision is sustainable on either of these grounds, we
overrule the State's sixth point.
V. The State's Points 1 to 4
The State's first four points contend that the trial court erred by
granting Hunter's motion to suppress because: (1) the ruling violates the United
States Supreme Court's holding in Ohio v. Robinette; (2)
Officer Keller acted reasonably; and (3) the ruling was based on the erroneous
conclusion that Hunter's continued detention exceeded the scope of the stop
when, in fact, (4) Hunter's detention had ended by the time Officer Keller asked
for permission to search. The arguments in points one through four do not
constitute exceptions to the general prohibition against warrantless searches.
See Morgan, 906 S.W.2d at 629. Instead, they focus on
Officer Keller's detention, or lack of detention, of
Hunter. Because the State proceeded at the suppression hearing under the consent
exception, not on the ground that the search was conducted incident to any
continued investigative detention based on reasonable articulable facts,(5)
we need not address these points.
We will affirm the trial court's suppression ruling if it is supported
by the record and correct on any theory of law applicable to the case. Villarreal
v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). We have held that the
record before us supports the trial court's suppression ruling either on the
ground that Hunter's consent was not voluntary or on the ground that the State
failed to prove by clear and convincing evidence that Hunter's consent was
voluntary. Any dispute over any continued detention of Hunter is mooted by our
holding that the record supports the trial courts suppression ruling on the
consent issue. Accordingly, we decline to address the State's points one through
four.
VI. Conclusion
Having overruled the State's sixth point, having determined that the
State's fifth point presents no basis for reversal of the trial court's
suppression ruling, and having determined that the State's first through fourth
points are moot in light of our disposition of the State's sixth point, we
affirm the trial court's order granting Hunter's suppression motion.
 
          
           
           
           
           
    SUE WALKER
                                                              
JUSTICE
 
PANEL B: DAUPHINOT, GARDNER, and WALKER, JJ.
PUBLISH
[Delivered March 20, 2003]

1. We note that at various times Officer Keller turned off
the microphone recording the audio portion of the stop.
2. The trial court did not believe Officer Keller's
testimony that Hunter was free to leave prior to the search.
3. Thus, the State's fifth point does not entitle it to a
reversal of the trial court's suppression ruling.
4. Although the United States Constitution only requires
the State to prove the voluntariness of consent by a preponderance of the
evidence, the Texas Constitution requires the State to show by clear and
convincing evidence that the consent was freely given. Carmouche,
10 S.W.3d at 331 (citing State v. Ibarra, 953 S.W.2d 242,
245 (Tex. Crim. App. 1997)).
5. In fact, Officer Keller specifically denied possessing
reasonable articulable facts justifying a continued detention:

         Q. Did you smell marijuana when
 you were standing up there [by the driver's side window]?
         A. No.
         Q. Did you smell alcohol on
 this [sic] breath?
         A. No.
         Q. Did he pull a gun on you?
         A. No.
         Q. Did you feel unsafe - - fear
 for your safety or anything like that at that point?
         A. No.
         . . . .
         Q. So, when we assume, like the
 prosecutor said something like him hiding stuff, let's hide something real
 quick, you didn't see anything like that, did you?
         A. No.