TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00120-CR







The State of Texas, Appellant



v.



Pamela McAlpin, Appellee






FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY


NO. 695,636, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N



The State appeals orders granting appellee Pamela McAlpin's motions to
suppress evidence and statements as the fruit of an unlawful warrantless search. See
Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2006); see also U.S. Const. amends. IV,
XIV. (1) We conclude that the trial court incorrectly applied the law to the facts, and we reverse the
suppression orders.

The trial court was not asked to make formal findings of fact and conclusions of law. 
See State v. Cullen, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (holding that trial court must state
its essential findings upon request of losing party on motion to suppress). However, in response to
the prosecutor's inquiry at the conclusion of the hearing, the court did state for the record that it
found the State's witness--the only witness to testify--to be credible. In our review of the trial
court's ruling, we must defer to this factual determination. Guzman v. State, 955 S.W.2d 85, 89
(Tex. Crim. App. 1997). We review de novo the court's application of the law to the facts. Id. We
will sustain the trial court's ruling if it is reasonably supported by the record and correct on any
theory of law applicable to the case. Willover v. State, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The witness was Austin Police Officer Michael Larosa. He testified that he was
dispatched to an Austin apartment complex at 1200 Treadwell to investigate a report of a person
leaving the scene of an accident. He arrived at the complex at 4:30 a.m., four minutes after receiving
the report. There, he met Bill Carter, a resident at the complex. Larosa described what he was
told by Carter:


He said that he was--he heard a crash and he went to his balcony, and then
when he went out to the balcony, he saw this car hit another car or another two cars
and then pull into a parking spot, a female get out, start walking around the parking
lot and then she disappeared.



Carter showed Larosa the vehicle the woman had been driving, a Buick, and the vehicles that she
had hit. The Buick had a flat tire and scratches on a quarter panel. The other vehicles also bore
marks consistent with Carter's description of the incident. The driver of the Buick was no longer
at the scene; Carter told Larosa that she had walked away with her dog. Larosa found no notes on
the other vehicles.

Carter told Larosa that he had seen the driver of the Buick "around the apartment
complex" but did not know her name or where she lived. The Buick had Mississippi license plates. 
A check on the plates showed that the car was registered to Pamela McAlpin at an out-of-state
address. Hoping to learn the identity of the driver and her local address, Larosa tried the Buick's
door and found that it was unlocked. A purse was sitting in the Buick's front seat, and inside the
purse Larosa discovered a postcard addressed to Pamela McAlpin at 1200 Treadwell apartment 118. 

Larosa went to apartment 118, arriving at 4:50 a.m. Appellee Pamela McAlpin
answered his knock. Larosa did not testify regarding her state of dress, but he did say that
she appeared to be sleepy and that her eyes were bloodshot. According to Larosa, McAlpin smelled
strongly of alcoholic beverages and seemed disoriented as to the time. She acknowledged
hitting cars in the parking lot but said she had not noticed any damage. She also admitted drinking
vodka and taking three prescription medications during the course of the evening. Larosa testified
that he administered the standard field sobriety tests, which were videotaped, and that McAlpin
failed them all.

McAlpin filed motions to suppress evidence and her statements as the fruit of an
unlawful search. The question presented is whether the circumstances justified Larosa searching
McAlpin's automobile for identifying evidence without first obtaining a warrant.

One of the recognized exceptions to the Fourth Amendment warrant requirement is
the automobile exception. Under this exception, a police officer may search a vehicle without a
warrant if he has probable cause to believe that it contains evidence of a crime. Carroll v. United
States, 267 U.S. 132, 149 (1925). The application of this exception does not require a showing of
exigent circumstances. Maryland v. Dyson, 527 U.S. 465, 466-67 (1999); State v. Guzman, 959
S.W.3d 631, 634 (Tex. Crim. App. 1998) (citing United States v. Johns, 469 U.S. 478, 484 (1985));
see also Dixon v. State, 206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006). If probable cause
justifies the search of a vehicle, it justifies the search of every part of the vehicle and its contents that
may conceal the object of the search. United States v. Ross, 456 U.S. 798, 825 (1982).

The operator of a vehicle that collides with and damages an unattended vehicle must
immediately stop and locate the operator or owner of the unattended vehicle and give that person her
name and address, or she must leave a note giving this information. Tex. Transp. Code Ann.
§ 550.024(a) (West 1999). A violation of this statute is a misdemeanor. Id. § 550.024(b).

Section 550.024 applies when the collision occurs on a highway or other public place,
but it does not apply if the collision occurs on private residential property. Id. § 550.001. The
transportation code does not define "public place," but this Court has applied the penal code
definition in another case arising under section 550.024. See In re W.T.O., No. 03-01-00630-CV,
2002 Tex. App. LEXIS 8214, at *6-7 (Tex. App.--Austin Nov. 21, 2002, no pet.) (not designated
for publication). Under the penal code, a "public place" means any place to which the public or a
substantial group of the public has access and expressly includes the common areas of apartment
houses. Tex. Penal Code Ann. § 1.07(a)(40) (West Supp. 2006). In W.T.O., this Court held that a
juvenile was operating his automobile in a public place when he collided with an unattended vehicle
in the parking lot of an apartment complex. 2002 Tex. App. LEXIS 8214, at *7. McAlpin argues
that W.T.O. is distinguishable, pointing out that the apartment complex in that case was large and
ungated while the instant record is silent as to both of these facts. Nevertheless, the conclusion that
the parking lot was a common area of an apartment building did not turn on the size of the complex
or whether the lot was gated. We conclude that section 550.024 was applicable to the collisions
between McAlpin's Buick and the unattended vehicles in the apartment complex parking lot.

McAlpin argues that even if section 550.024 applies, Larosa did not have probable
cause to believe that it had been violated. She points out that leaving the scene of the collision is not
prohibited by section 550.024, and she suggests that it may be necessary to leave in order to locate
the owner of the unattended vehicle. McAlpin also stresses the short amount of time that had
elapsed between the initial report of the collisions and the search of her car. She urges that it would
not be unreasonable for her to have left the scene for a few minutes to locate the owners of the other
cars, or to secure her dog, or to get pen and paper to write notes.

In dealing with probable cause, we deal with probabilities rather than certainties. 
Woodward v. State, 668 S.W.2d 337, 345 (Tex. Crim. App. 1982). Officers often confront
ambiguous circumstances and room must be allowed for some mistakes on their part, although the
mistakes must be those of reasonable persons acting on facts leading sensibly to their conclusions
of probability. Id. (quoting Brinegar v. United States, 338 U.S. 160, 175-76 (1949)). Larosa could
reasonably believe that the driver of the Buick was not knocking on doors at 4:30 a.m. seeking the
owners of the damaged cars. Although Larosa could not be certain that the driver would not return
to leave notes on the damaged vehicles, we hold that the facts and circumstances were sufficient to
warrant his belief that section 550.024 had been violated.

Probable cause to search exists when the totality of the circumstances allows a
conclusion that there is a fair probability of finding evidence at a particular location. Ornelas v.
United States, 517 U.S. 690, 696 (1996). Evidence of the identity of the perpetrator is evidence of
a crime. See Warden v. Hayden, 387 U.S. 294, 307 (1967); Ackenback v. State, 794 S.W.2d 567, 572
(Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). The dispositive issue in this appeal is whether
Larosa had probable cause to believe that evidence identifying the driver of the Buick would be
found inside the vehicle.

The record is silent as to whether Larosa saw the purse before opening the door of the
Buick. The State argues that it is reasonable to infer that the officer saw the purse through the car
window because it was sitting in the front seat. Whether or not such an inference would be
reasonable under the circumstances shown here, we must view the evidence in the light most
favorable to the trial court's ruling. State v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). 
Thus, we must assume in the absence of testimony to the contrary that Larosa did not see the purse
or the postcard before initiating the search.

The State asserts that "[i]t is commonly known, and courts have recognized, that
indicia of identity are usually to be found inside cars, especially in wallets, purses, and glove
compartments." The cases cited by the State in support of this statement are South Dakota v.
Opperman, 428 U.S. 364 (1976), and others involving inventory searches of lawfully impounded
vehicles. These authorities do not directly apply here, as McAlpin's car had not been impounded
and there is no evidence that Larosa was conducting an inventory of its contents. Nevertheless, we
believe that the State's broader point is correct: documents identifying the owner or operator of an
automobile, such as a registration receipt or proof of insurance, are commonly kept in the vehicle. 

In Ackenback, a burglar was interrupted by the homeowner and fled, carrying a video
recorder with him. 794 S.W.2d at 568-69. Passing police officers saw the fleeing suspect and
pursued him on foot. Id. at 569. The suspect dropped the video recorder, a glove, and a woman's
scarf, and he ultimately managed to escape after brandishing a firearm at one of the officers. Id. A
few minutes later, an automobile was found parked by a vacant building in the area to which the
suspect had been running. Id. The car's engine was warm and a set of keys could be seen inside. 
Id. Officers also saw inside the car a woman's scarf and a glove matching the one the suspect had
discarded. Id. Believing that this was the burglary suspect's vehicle, the officers opened the
unlocked car, searched it, and found documents that led them to the defendant. Id. The court of
appeals found that the facts known to the officers gave them probable cause to believe that the car
had been driven by the assailant "and therefore that it might contain evidence that could inform them
of the identity and possible location of the robber." Id. at 572.

In the cause now before us, Larosa had probable cause to believe that the operator of
the Buick had violated transportation code section 550.024 by failing to notify the owners of the
damaged vehicles, either in person or by note, of her name and address. It was reasonable for the
officer to believe that the Buick might contain evidence of the driver's identity and address. Under
the circumstances shown by the officer's credible testimony, the opening of the unlocked door and
the subsequent discovery of the postcard bearing McAlpin's name and address did not violate the
Fourth Amendment, and the trial court erred by sustaining the motions to suppress.

The orders granting McAlpin's motions to suppress are reversed and the cause is
remanded to the trial court for further proceedings.




 



 ___________________________________________

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Reversed and Remanded

Filed: March 7, 2007

Do Not Publish
1. McAlpin did not rely on the Texas Constitution as an independent basis for suppression.