**Thomas Frank ACKENBACK,**
**Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**Nos. 01–89–00430–CR, 01–89–00431–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 26, 1990.

Brian Wice, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Timothy G. Taft and Robert N. Kepple, Asst. Dist. Attys., for appellee.

Before EVANS, C.J., and DUGGAN and MIRABAL, JJ.

OPINION

MIRABAL, Justice.

A jury found appellant guilty of aggravated robbery and attempted capital murder of a peace officer. After finding one enhancement paragraph true, the jury assessed punishment for the aggravated robbery at 20 years confinement and a $2,500 fine; and for the attempted capital murder, 75 years confinement and a $10,000 fine.

In four points of error, appellant complains the trial court committed error in connection with the admission into evidence of items seized during two warrantless searches.

At trial, Estee Larson, the complainant, testified that on June 2, 1989, at approximately 7:30 p.m., she was lying on her bed talking on the telephone, when she heard several knocks on her front door. She looked out the window, and after seeing a man at the door whom she did not recognize, opted not to answer the door. After the pounding at the front door grew louder, Larson retrieved her gun and started down the stairs. The intruder had kicked her front door in. Larson saw the intruder holding her television, video recorder, and cable converter box. After she screamed at him, he dropped everything but the video recorder and fled with Larson in pursuit. The intruder dropped the recorder in a ditch as he managed to outpace Larson. Two men, whom Larson later learned were police officers, chased the intruder. Larson did not fire her gun.

Ron Hulett, an officer with the narcotics division of the Houston Police Department, testified that he and his partner, Officer Fred Wood, were in the area to meet an informant. While driving down the street, Officer Hulett noticed a person he identified as appellant carrying what looked like a record player, coming out of a residence. After observing a woman running out of the same residence with a pistol in her hand, Officer Hulett concluded he was observing a burglary in progress. Officer Hulett communicated this to Officer Wood, who turned the car around and pulled up beside appellant, who was kneeling down behind a fence looking back at Ms. Larson.

Officer Hulett got out of the automobile with his badge in hand, and told appellant he was a police officer and needed to talk with him. Appellant replied "F— you guys!," dropped the video recorder, and started running through a yard. As he began to run, appellant reached into his rear pants pocket, pulled out a large woman's scarf and a glove, and dropped both items within five or six feet of the VCR he had dropped. Officer Wood picked up the items. Appellant ran toward a nearby apartment complex where he was unable to scale a fence, catching his right foot in the fence prongs and falling backward with his foot still suspended in the air. From the other side of the fence, Officer Hulett told appellant that he was under arrest and not to move, while his partner attempted to scale the fence. Appellant managed to dislodge his foot from the fence and began running into the apartment complex before Officer Wood made it over the fence. Several seconds later, Officer Wood reappeared and shouted that appellant had a gun. By the time Officer Wood had retrieved his gun from the police car, and with Officer Hulett still unable to scale the fence to give chase, appellant managed to escape. The police searched the area with the aid of a helicopter and patrol units, to no avail. About 15 minutes after appellant had escaped, Officer Hulett observed a light yellow automobile near the scene in a parking lot. The vehicle was parked in the area appellant was headed for when Officer Hulett had first seen him. Upon looking into the interior of the automobile, Officer Hulett saw a glove that matched the one appellant had discarded, and a woman's scarf. The glove and scarf were on the back seat floor board behind the driver's seat, visible through the window. The automobile's engine was still warm, there was a set of keys on the driver's side floor board, visible through the window, and the automobile was unlocked.[1] When the officers saw the matching glove in the car, they concluded this was the robber's vehicle. They "inventoried the vehicle for

information or evidence that would help us make the case." The contents of the automobile included some job applications and vehicle title papers. The police seized the car because "we believed it to be involved in the burglary investigation."

After seeing the job applications, vehicle title, and a rent receipt, that same evening Officer Hulett went to two addresses that were on the papers. Officer Hulett met Ms. Nickie Smith, who led the officers to an apartment complex seven or eight miles away, and knocked on a window next to the front door of an apartment. As a woman came out of the front door in response to Smith's knock, Officer Hulett observed appellant get up from a couch and run to the back door. Although the woman who answered the door attempted to block his path, Officer Hulett went inside and chased appellant through the apartment. Appellant was apprehended outside after a fierce struggle with three officers. En route back to appellant's apartment, Officer Hulett recovered a black .25 Beretta automatic firearm near the patio fence, which contained a live round with an indented primer. Officer Hulett testified that this meant the firing pin had met the primer. After placing appellant in a police car, Officer Hulett returned to the apartment to speak with the female resident of the apartment. The door was open, but no one was home. Although the officers attempted to perform a trace metal detection test to determine whether appellant had handled the gun, appellant refused to permit the officers to spray his hands.

Officer Fred Wood, Officer Hulett's partner, testified to the same facts. After Officer Wood scaled the fence, he opted not to grab the appellant for fear appellant had a weapon. After he had chased appellant through the apartment complex, appellant stopped and pulled out what Officer Wood believed to be a .25 automatic pistol. Appellant pointed the weapon at Officer Wood and was trying to fire it, but the weapon did not discharge. After appellant told Of-

---

1. One of the keys was later found to fit the front door of the residence where appellant was

found that evening.

ficer Wood he was going to kill him, Officer Wood retreated and yelled to his partner that appellant had a gun. By the time Officer Wood returned to the police car to retrieve his gun, appellant was nowhere in sight. Later that evening, after arresting appellant at the apartment complex, the officers returned to the apartment where the front and rear doors were open, but no one was home. After looking through the apartment for any people, the officers locked the apartment and examined the scene for evidence. Officer Hulett recovered State's exhibit 25, a loaded pistol.

The only witness called by the defense was a nurse, who testified about surgery performed on appellant's foot. Appellant did not testify.

In his first point of error, appellant contends the trial court erred in overruling appellant's motion to suppress the items seized during a warrantless search of appellant's automobile, because the search was illegal.

In his second point of error, appellant contends the trial court erred in overruling appellant's motion to suppress items seized during a warrantless search of appellant's residence, because the search was illegal.

The State maintains appellant did not preserve points of error one and two because appellant failed to bring forth any statement of facts from the hearing on appellant's motions to suppress.

Defense counsel filed written motions to suppress items seized in warrantless searches of appellant's automobile and residence. The record reflects the trial court disposed of defense counsel's motions to suppress on the basis of affidavits. Neither motion reflects a written ruling thereon, but the record shows a docket entry on January 26, 1989, "mot. suppress denied." Although the docket entry does not explicitly specify whether one or both motions to suppress were denied, it is apparent from the trial statement of facts that both motions had been denied. There is no statement of facts from the motions hearing because the trial judge disposed of the motions on the basis of affidavits rather than oral testimony, as authorized by TEX.CODE

CRIM.P.ANN. art. 28.01, § 1(6) (Vernon 1989).

Under point of error one, appellant does not complain about the seizure of the glove and the scarf from the automobile. Rather, his complaint is that the police unlawfully searched the car, resulting in an unlawful seizure of the job applications, a title to the motor vehicle, and a rent receipt; these items were admitted before the jury over appellant's renewed objections.

■ Any finding of the trial court in connection with its ruling on a motion to suppress, that is supported by the evidence, is not to be disturbed. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.] 1980), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981). Appellant re-urged his objections to the admission of the evidence during trial, and the presiding visiting judge overruled the objections, stating for the record that the pre-trial rulings made on appellant's motions to suppress would not be disturbed. Appellant is complaining about the rulings on both his pre-trial and trial motions to suppress, and he directs our attention to the evidence submitted in connection with each. The relevant trial testimony has already been summarized in this opinion; the following is the relevant affidavit testimony submitted in support of the pre-trial motions to suppress.

Appellant's affidavit states:

My name is THOMAS FRANK ACKENBACK. I am the husband of DARLENE ACKENBACK. My wife and I own a 1977 Cadillac. I parked the Cadillac in the parking lot of an automobile repair business. I secured all car doors but did not lock them. I removed the keys from the ignition and hid them under the seat where I usually keep them. Neither when I parked the car, nor at any later time, did I have the intention of discarding, abandoning or relinquishing my reasonable expection of privacy in the vehicle. The police never presented me with a warrant to search and confiscate my vehicle nor did they ever ask my consent.

Officer Ron Hulett's affidavit states, in relevant part, the following:

I then observed a vehicle parked directly across the street from where the defendant was going to cross the street. The vehicle was in a parking lot of a business that was closed and vacant. The vehicle was positioned behind a large sign so that it was partially concealed from the street. I approached it in the vacant lot and felt that the engine was warm. Someone from the area told me that the car didn't belong there. I could see from the outside of the vehicle looking in that there were apparently keys to the vehicle laying on the floorboard and also saw in plain view a glove behind the seat which matched the glove the defendant dropped while running. I knew from prior experiences that to get a search warrant would take at least 2 hours and that the defendant had escaped and we had only a description of him.

I also felt to leave the car there with the keys on the floorboard could allow a dangerous criminal to escape in the vehicle, after having been told by officer Wood that the defendant tried to shoot him. I also felt that anyone could steal the vehicle if it were left unattended. I then, believing that the vehicle was connected with the crime(s) and the defendant, tried the door, which was unlocked. I then recovered one glove, 2 ladies necklaces, another scarf similar to the one the defendant dropped and a screwdriver in the vehicle. I also recovered from the glove box, while conducting inventory of the property, before towing, a receipt for purchase of the vehicle by a Darlene Richey. I also found the car registered to a Darlene Richey. I also found 2 employment applications with the applicant being Darlene Richey and an address. Officer Wood recovered one set of bolt cutters and tire tool from the trunk. The vehicle was then towed for storage and the property tagged. After an investigation concerning information from the employee applications, Officer Wood and myself went to 11713 Bobwhite and met a woman named Nicky Smith. She said she was Darlene Rich-

ey's mother and that Darlene Richey owned a vehicle recovered. She told us she would take us to her daughter. She also stated that she thought the car may have been stolen earlier this morning, but they had not had time to call the police.

Mrs. Smith took us to apartments located at 6305 Westbound and said her daughter had no boyfriend and lived above. She directed us to apt # 125.

A search or seizure effectuated without a warrant issued upon probable cause is "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One recognized exception is the "automobile exception." *See Carroll v. United States*, 267 U.S. 132, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543 (1925). The issue in the present case is whether the search of appellant's car can be justified by the automobile exception.

■ Since the Texas Court of Criminal Appeals has held that article I, section 9 of the Texas Constitution provides no greater protection than the fourth amendment to the United States Constitution, *Eisenhauer v. State*, 754 S.W.2d 159, 162 (Tex.Crim. App.), *cert. denied*, 488 U.S. 848, 109 S.Ct. 127, 102 L.Ed.2d 101 (1988), we will apply the standard set forth in *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985), to determine if the facts in this case are sufficient to invoke the "automobile exception" as now defined and rationalized by the United States Supreme Court.

In *Carney*, the exact question before the Court was whether police with probable cause, but without a warrant or genuine exigent circumstances, could search a motor home parked in a lot in downtown San Diego. The Court upheld the warrantless search, which it found was reasonable in scope, reasoning:

The public is fully aware that it is accorded less privacy in its automobiles because of this compelling governmental

need for regulation. Historically, "individuals always [have] been on notice that movable vessels may be stopped and searched on facts giving rise to probable cause that the vehicle contains contraband, without the protection afforded by a magistrate's prior evaluation of those facts." [*U.S. v.*] *Ross, supra,* 456 U.S., [798] at 806, n. 8, 102 S.Ct., [2157] at 2163, n. 8 [72 L.Ed.2d 572]. In short, the pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy, and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate so long as the overriding standard of probable cause is met.

When a vehicle is being used on the highways, or if it is readily capable of such use and is found stationary in a place not regularly used for residential purposes—temporary or otherwise—the two justifications for the vehicle exception come into play. First, the vehicle is obviously readily mobile by the turn of an ignition key, if not actually moving. Second, there is a reduced expection of privacy stemming from its use as a licensed motor vehicle subject to a range of police regulation inapplicable to a fixed dwelling.

471 U.S. at 392–93, 105 S.Ct. at 2069–70 (footnote omitted).

In the present case, we find the vehicle was readily capable for use on the highways, and it was found stationary in a place not regularly used for residential purposes. The car engine was still warm, indicating it had been driven a short time before, and the keys were on the floor board. It was parked in a parking lot of a vacant building. As in *Carney,* the vehicle was readily mobile with the turn of a key.

We find that the vehicle in this case falls within the scope of the "vehicle exception." Thus, the only remaining issue is whether the police had probable cause to search the vehicle. *Carney,* 471 U.S. at 392–93, 105 S.Ct. at 2070; *see also Martin v. State,* 780 S.W.2d 497, 500 (Tex.App.—Corpus Christi 1989, pet. ref'd); *State v. Cantu,* 776 S.W.2d 728, 731 (Tex.App.—Corpus Christi 1989, pet. ref'd).

■ Probable cause for a search exists where the facts and circumstances within the knowledge of the officer on the scene, and of which the officer has reasonably trustworthy information, would lead a person of reasonable caution and prudence to believe that he or she will find the instrumentality of a crime or evidence pertaining to a crime. *Brown v. State,* 481 S.W.2d 106, 110 (Tex.Crim.App.1972). The inarticulate hunch, suspicion, or good faith of an arresting officer is insufficient to constitute probable cause. *Id.*

■ We find there were several facts giving rise to probable cause sufficient for the police to seize and search the Cadillac. The car was the only car parked in a lot next to a vacant building, and was in the vicinity of the robbery, in the direction appellant was heading as he left the crime scene; a glove, matching the glove that appellant had dropped, was in plain view inside the car, as was a scarf similar to the scarf appellant had dropped; the engine was warm, the doors were unlocked, and the keys were visible, indicating it had not been parked there for a long period of time, and that the driver did not intend to leave it there for an extended period. It was reasonable for the police to believe that the car had been driven by the robber, and therefore that it might contain evidence that could inform them of the identity and possible location of the robber.

We hold that the police were not required to secure a warrant before searching the vehicle. We overrule point of error one.

■ In the portion of his second point of error that comports with his objection raised in the trial court, appellant asserts that the warrantless search of his residence, and the resulting warrantless seizure of a handgun, were illegal, and that the trial court erred in overruling his motion to suppress the handgun.

Officer Hulett testified, by affidavit and in court, that he found the handgun just outside appellant's patio gate in a common area of the apartments, after appellant had

been placed under arrest. The officers were returning to appellant's apartment to talk with the other occupants when Officer Hulett, who was outside the apartment on public property, saw the gun lying on the ground.[2]

In view of the evidence that the gun was found outside the apartment along appellant's escape route, and not inside the apartment, the trial court could have concluded that the gun was not seized as a result of a warrantless search of appellant's residence. We will not disturb the trial court's ruling when it is supported by the evidence. *Green*, 615 S.W.2d at 707.

We overrule point of error two.

In his third point of error, appellant asserts that the trial court erred in refusing appellant's request for an evidentiary hearing on his motion to suppress evidence.

The Texas Code of Criminal Procedure provides:

> When a hearing on the motion to suppress evidence is granted, the court may determine the merits of said motion on the motions themselves, or upon opposing affidavits, or upon oral testimony, subject to the discretion of the court.

Tex.Code Crim.P.Ann. art. 28.01, § 1(6) (Vernon 1989).

It is appellant's position that while this provision appears valid on its face, it is unconstitutional as applied in this case. Appellant argues that his claims raised by the motions to suppress could not have been fully and fairly litigated solely on the basis of the affidavits submitted. Appellant claims that, by deciding the motions to suppress on the basis of conflicting affidavits, the trial court denied appellant the right to have the court consider the credibility of the witnesses by actually hearing them testify. Appellant further claims the denial of cross-examination, the introduction of evidence at the guilt-innocence stage that would have been admissible only at the suppression hearing, and the denial of an opportunity to subject appellant to

cross-examination to determine whether he should testify before the jury, all combined to work a denial of due process.

The Court of Criminal Appeals has held that a trial court is not required to conduct a hearing on a pretrial motion to suppress, stating:

> Article 28.01, supra, is not a mandatory statute, but is one directed to the court's discretion. The question of whether to hold a hearing on a pretrial motion to suppress evidence rests within the discretion of the trial court. The court may elect to determine the merits of a motion to suppress evidence only during the trial upon the merits when proper objection is then lodged rather than at a pretrial hearing. Even if a pretrial motion to suppress is called to the attention of the trial court, no error is presented if the trial court, in its discretion, declines to hear the same. While the court is not required to hear any pretrial motion to suppress evidence the accused retains his right to raise any appropriate objection at trial.

*Calloway v. State*, 743 S.W.2d 645, 649 (Tex.Crim.App.1988) (citations omitted).

In the present case, the trial court allowed appellant a pre-trial hearing on his motions to suppress, determining the merits of the motions upon affidavits as authorized by article 28.01, § 1(6). It was not an abuse of discretion for the judge presiding over the trial to refuse to grant another hearing on the motions to suppress outside the hearing of the jury. We find that article 28.01, § 1(6) is constitutional and was constitutionally applied to appellant. We overrule point of error three.

In his fourth point of error, appellant contends the trial court erred in denying appellant's request for a jury instruction that the jury should not consider any evidence they believe to have been illegally obtained by law enforcement.

The Texas Code of Criminal Procedure provides:

---

2. Appellant's witnesses filed affidavits, in support of the motions to suppress, stating that the firearm was taken by the police from a bedroom in the apartment.

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

Tex.Code Crim.P.Ann. art. 38.23(a) (Vernon Supp.1990).

The terms of this statute are mandatory, and when an issue of fact is raised, a defendant has a statutory right to have the jury charged accordingly. *Murphy v. State*, 640 S.W.2d 297, 299 (Tex.Crim.App. 1982). Where no such issue is raised by the evidence, the trial court acts properly in refusing a requested charge. *Id.* Appellant argues that the affidavits of appellant, appellant's wife, appellant's sister-in-law, and Frank Eberhart, all raise the fact question of the validity of the search of his apartment, and that appellant's affidavit raises the fact issue of the validity of the search of his car.

The affidavit testimony upon which appellant relies to create a fact issue did not come before the jury. Appellant did not present any witnesses to the jury on the suppression issue. The trial court is required to submit a jury charge on the illegal search issue only where a disputed fact issue arises from the evidence. *Gaffney v. State*, 575 S.W.2d 537, 542–43 (Tex. Crim.App. [Panel Op.] 1978). The trial court did not err in refusing to charge the jury pursuant to article 38.23(a).

We overrule point of error four.

We affirm the judgment.