# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00120-CR

**The State of Texas, Appellant**

**v.**

**Pamela McAlpin, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. 695,636, HONORABLE NANCY WRIGHT HOHENGARTEN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State appeals orders granting appellee Pamela McAlpin's motions to suppress evidence and statements as the fruit of an unlawful warrantless search. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2006); *see also* U.S. Const. amends. IV, XIV.[1] We conclude that the trial court incorrectly applied the law to the facts, and we reverse the suppression orders.

The trial court was not asked to make formal findings of fact and conclusions of law. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (holding that trial court must state its essential findings upon request of losing party on motion to suppress). However, in response to the prosecutor's inquiry at the conclusion of the hearing, the court did state for the record that it

---

[1] McAlpin did not rely on the Texas Constitution as an independent basis for suppression.

found the State's witness—the only witness to testify—to be credible. In our review of the trial court's ruling, we must defer to this factual determination. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We review de novo the court's application of the law to the facts. *Id*. We will sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The witness was Austin Police Officer Michael Larosa. He testified that he was dispatched to an Austin apartment complex at 1200 Treadwell to investigate a report of a person leaving the scene of an accident. He arrived at the complex at 4:30 a.m., four minutes after receiving the report. There, he met Bill Carter, a resident at the complex. Larosa described what he was told by Carter:

> He said that he was—he heard a crash and he went to his balcony, and then when he went out to the balcony, he saw this car hit another car or another two cars and then pull into a parking spot, a female get out, start walking around the parking lot and then she disappeared.

Carter showed Larosa the vehicle the woman had been driving, a Buick, and the vehicles that she had hit. The Buick had a flat tire and scratches on a quarter panel. The other vehicles also bore marks consistent with Carter's description of the incident. The driver of the Buick was no longer at the scene; Carter told Larosa that she had walked away with her dog. Larosa found no notes on the other vehicles.

Carter told Larosa that he had seen the driver of the Buick "around the apartment complex" but did not know her name or where she lived. The Buick had Mississippi license plates. A check on the plates showed that the car was registered to Pamela McAlpin at an out-of-state

2

address. Hoping to learn the identity of the driver and her local address, Larosa tried the Buick's door and found that it was unlocked. A purse was sitting in the Buick's front seat, and inside the purse Larosa discovered a postcard addressed to Pamela McAlpin at 1200 Treadwell apartment 118.

Larosa went to apartment 118, arriving at 4:50 a.m. Appellee Pamela McAlpin answered his knock. Larosa did not testify regarding her state of dress, but he did say that she appeared to be sleepy and that her eyes were bloodshot. According to Larosa, McAlpin smelled strongly of alcoholic beverages and seemed disoriented as to the time. She acknowledged hitting cars in the parking lot but said she had not noticed any damage. She also admitted drinking vodka and taking three prescription medications during the course of the evening. Larosa testified that he administered the standard field sobriety tests, which were videotaped, and that McAlpin failed them all.

McAlpin filed motions to suppress evidence and her statements as the fruit of an unlawful search. The question presented is whether the circumstances justified Larosa searching McAlpin's automobile for identifying evidence without first obtaining a warrant.

One of the recognized exceptions to the Fourth Amendment warrant requirement is the automobile exception. Under this exception, a police officer may search a vehicle without a warrant if he has probable cause to believe that it contains evidence of a crime. *Carroll v. United States*, 267 U.S. 132, 149 (1925). The application of this exception does not require a showing of exigent circumstances. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *State v. Guzman*, 959 S.W.3d 631, 634 (Tex. Crim. App. 1998) (citing *United States v. Johns*, 469 U.S. 478, 484 (1985)); *see also Dixon v. State*, 206 S.W.3d 613, 619 n.25 (Tex. Crim. App. 2006). If probable cause

justifies the search of a vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *United States v. Ross*, 456 U.S. 798, 825 (1982).

The operator of a vehicle that collides with and damages an unattended vehicle must immediately stop and locate the operator or owner of the unattended vehicle and give that person her name and address, or she must leave a note giving this information. Tex. Transp. Code Ann. § 550.024(a) (West 1999). A violation of this statute is a misdemeanor. *Id*. § 550.024(b).

Section 550.024 applies when the collision occurs on a highway or other public place, but it does not apply if the collision occurs on private residential property. *Id*. § 550.001. The transportation code does not define "public place," but this Court has applied the penal code definition in another case arising under section 550.024. *See In re W.T.O.*, No. 03-01-00630-CV, 2002 Tex. App. LEXIS 8214, at *6-7 (Tex. App.—Austin Nov. 21, 2002, no pet.) (not designated for publication). Under the penal code, a "public place" means any place to which the public or a substantial group of the public has access and expressly includes the common areas of apartment houses. Tex. Penal Code Ann. § 1.07(a)(40) (West Supp. 2006). In *W.T.O.*, this Court held that a juvenile was operating his automobile in a public place when he collided with an unattended vehicle in the parking lot of an apartment complex. 2002 Tex. App. LEXIS 8214, at *7. McAlpin argues that *W.T.O.* is distinguishable, pointing out that the apartment complex in that case was large and ungated while the instant record is silent as to both of these facts. Nevertheless, the conclusion that the parking lot was a common area of an apartment building did not turn on the size of the complex or whether the lot was gated. We conclude that section 550.024 was applicable to the collisions between McAlpin's Buick and the unattended vehicles in the apartment complex parking lot.

McAlpin argues that even if section 550.024 applies, Larosa did not have probable cause to believe that it had been violated. She points out that leaving the scene of the collision is not prohibited by section 550.024, and she suggests that it may be necessary to leave in order to locate the owner of the unattended vehicle. McAlpin also stresses the short amount of time that had elapsed between the initial report of the collisions and the search of her car. She urges that it would not be unreasonable for her to have left the scene for a few minutes to locate the owners of the other cars, or to secure her dog, or to get pen and paper to write notes.

In dealing with probable cause, we deal with probabilities rather than certainties. *Woodward v. State*, 668 S.W.2d 337, 345 (Tex. Crim. App. 1982). Officers often confront ambiguous circumstances and room must be allowed for some mistakes on their part, although the mistakes must be those of reasonable persons acting on facts leading sensibly to their conclusions of probability. *Id*. (quoting *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)). Larosa could reasonably believe that the driver of the Buick was not knocking on doors at 4:30 a.m. seeking the owners of the damaged cars. Although Larosa could not be certain that the driver would not return to leave notes on the damaged vehicles, we hold that the facts and circumstances were sufficient to warrant his belief that section 550.024 had been violated.

Probable cause to search exists when the totality of the circumstances allows a conclusion that there is a fair probability of finding evidence at a particular location. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Evidence of the identity of the perpetrator is evidence of a crime. *See Warden v. Hayden*, 387 U.S. 294, 307 (1967); *Ackenback v. State*, 794 S.W.2d 567, 572 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd). The dispositive issue in this appeal is whether

5

Larosa had probable cause to believe that evidence identifying the driver of the Buick would be found inside the vehicle.

The record is silent as to whether Larosa saw the purse before opening the door of the Buick. The State argues that it is reasonable to infer that the officer saw the purse through the car window because it was sitting in the front seat. Whether or not such an inference would be reasonable under the circumstances shown here, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Thus, we must assume in the absence of testimony to the contrary that Larosa did not see the purse or the postcard before initiating the search.

The State asserts that "[i]t is commonly known, and courts have recognized, that indicia of identity are usually to be found inside cars, especially in wallets, purses, and glove compartments." The cases cited by the State in support of this statement are *South Dakota v. Opperman*, 428 U.S. 364 (1976), and others involving inventory searches of lawfully impounded vehicles. These authorities do not directly apply here, as McAlpin's car had not been impounded and there is no evidence that Larosa was conducting an inventory of its contents. Nevertheless, we believe that the State's broader point is correct: documents identifying the owner or operator of an automobile, such as a registration receipt or proof of insurance, are commonly kept in the vehicle.

In *Ackenback*, a burglar was interrupted by the homeowner and fled, carrying a video recorder with him. 794 S.W.2d at 568-69. Passing police officers saw the fleeing suspect and pursued him on foot. *Id*. at 569. The suspect dropped the video recorder, a glove, and a woman's scarf, and he ultimately managed to escape after brandishing a firearm at one of the officers. *Id*. A

6

few minutes later, an automobile was found parked by a vacant building in the area to which the suspect had been running. *Id*. The car's engine was warm and a set of keys could be seen inside. *Id*. Officers also saw inside the car a woman's scarf and a glove matching the one the suspect had discarded. *Id*. Believing that this was the burglary suspect's vehicle, the officers opened the unlocked car, searched it, and found documents that led them to the defendant. *Id*. The court of appeals found that the facts known to the officers gave them probable cause to believe that the car had been driven by the assailant "and therefore that it might contain evidence that could inform them of the identity and possible location of the robber." *Id*. at 572.

In the cause now before us, Larosa had probable cause to believe that the operator of the Buick had violated transportation code section 550.024 by failing to notify the owners of the damaged vehicles, either in person or by note, of her name and address. It was reasonable for the officer to believe that the Buick might contain evidence of the driver's identity and address. Under the circumstances shown by the officer's credible testimony, the opening of the unlocked door and the subsequent discovery of the postcard bearing McAlpin's name and address did not violate the Fourth Amendment, and the trial court erred by sustaining the motions to suppress.

The orders granting McAlpin's motions to suppress are reversed and the cause is remanded to the trial court for further proceedings.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Reversed and Remanded

Filed:   March 7, 2007

Do Not Publish