In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00580-CR
_____

NOEL SOLIS-CASERES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 9th District Court
Montgomery County, Texas
Trial Cause No. 12-10-10613 CR

MEMORANDUM OPINION

Oscar Pavon died during the early morning hours of October 7, 2012, as a result of multiple gunshot wounds. Appellant Noel Solis-Caseres (Noel) was indicted for the murder of Pavon.

Noel initially pleaded "not guilty," but on the third day of his jury trial he changed his plea to "guilty." The trial court found Noel guilty of murder and ordered a pre-sentencing investigation prior to the punishment hearing. At the

1

conclusion of the punishment hearing, the trial court sentenced Noel to life in prison. The trial court then stated on the record that the trial court certification would be reformed to reflect: "It is not a plea bargain case and the defendant has the right of appeal as to punishment only." Noel filed a notice of appeal.

On appeal Noel raises two appellate issues. First, Noel argues "[t]he trial court erred in limiting [his] right of appeal only to errors in the punishment proceedings." Second, he argues that "[t]he trial court erred in refusing to hear Appellant's Motion to Suppress filed on November 4, 2014 as being untimely filed in violation of Article 28.01[.]" We affirm.

UNDERLYING FACTS

Motions to Suppress

Noel filed two motions to suppress. In his first motion to suppress, filed on July 17, 2013 (first motion to suppress), he requested that the trial court suppress statements "made by Noel Solis-Caseres [that] were involuntary and were coerced and enticed" from him, statements "tainted by the illegal and unlawful detention and arrest," and statements made by him that "were taken without the safeguards required by and in violation of Article 38.22 of the Code of Criminal Procedure[,]" arguing that any use of such statements violated his rights pursuant to the "Fourth, Fifth, Sixth, and Fourteenth Amendments . . . and Article[s] 1.05 and 38.23 of the

2

Texas Code of Criminal Procedure." The reporter's record reflects that the trial court granted in part and denied in part the first motion to suppress. *See infra* p. 4.

On November 4, 2013, which was the first day of trial, Noel filed a second motion to suppress styled as, "Motion to Suppress Physical Evidence and Statements" (second motion to suppress), wherein he argued that the actions of officers from the Houston Police Department and the Conroe Police Department violated his rights, and he sought suppression of "[a]ny statements obtained from Noel Solis-Caseres in violation of Article 38.22 . . . and in violation of the rights of Noel Solis-Caseres[,]" under the United States Constitution and Texas Constitution as well as "[a]ny tangible evidence seized in connection with this case, including but not limited to the handgun, ammunition clips, bullets, a T-shirt and a [S]tyrofoam cup, all found in a bag in a dumpster in the City of Houston . . . [because] such tangible evidence was found and seized as a result of the unlawful custodial interrogation of Defendant . . . and is therefore inadmissible as 'fruit of the poisonous tree[,]' flowing from said unlawful interrogation."

The jury was impaneled, selected, sworn, and then released for the day with instructions to return the following day. After the jury was released for the day, Noel notified the trial court that he wanted to proceed to have the trial court hear both of his motions to suppress. The trial court ruled that the second motion to

3

suppress was untimely, but it allowed Noel to proceed with a hearing on the first motion to suppress, stating as follows:

> THE COURT: I'm going to rule that your motion to suppress physical evidence is not timely. But your motion to suppress the statements that was filed back in July is timely. So you can proceed on that one. And, of course, if you want to make a record with regard to the November 4th motion to suppress, I'll certainly let you do that as well.
>
> [DEFENSE ATTORNEY]: All right. Very good. Yes, we would like to do that, Judge.
>
> THE COURT: Okay. But understand I'm not going to consider your making a record for appellate purposes in the body of evidence in this case.
>
> [DEFENSE ATTORNEY]: I understand.

<u>Motion to Suppress Hearing</u>

The first witness to testify at the suppression hearing was Officer John Bond, an officer with the Houston Police Department. He explained that on October 8, 2012, he was working at the desk behind the glassed-in area of the Gulfton Storefront police substation in Houston. According to Officer Bond, Noel walked in and wanted to speak with someone who spoke Spanish. Officer Bond spoke a little Spanish, and he asked Noel "what he wanted -- 'Que pasa' -- in Spanish" and Noel held his finger out in a gesture like a gun (with his index finger extended and thumb pointing upward) and stated, "Conroe." Officer Bond called his partner,

4

Officer Daniel Mendoza, for assistance. At the hearing, Officer Bond explained that at this point Noel was free to leave the substation and Noel was not in handcuffs. Officer Bond then obtained identification from Noel and confirmed that a warrant had been issued for Noel's arrest in Conroe. Officer Bond testified that once he learned there was an arrest warrant out for Noel, and upon the arrival of Officer Mendoza, Noel was then handcuffed and searched. Officer Bond called the homicide division. While waiting for the Conroe Police Department to respond, Officer Bond did not attempt to read Noel his rights or interrogate Noel, and Noel did not ask for an attorney or try to invoke his right to remain silent.

Officer Mendoza with the Houston Police Department also testified at the hearing. Officer Mendoza stated that he responded to Officer Bond's call for assistance, and upon Officer Mendoza's arrival to the substation, Noel was in the waiting area and he was not handcuffed. After Officer Bond informed Officer Mendoza that there was a murder warrant for Noel, Officer Mendoza handcuffed Noel. Officer Mendoza testified that "because [Noel] mentioned the gun, that he had shot somebody[,]" because of the murder warrant, and also due to Officer Mendoza's concern that there may be a weapon involved in the case, Officer Mendoza searched Noel. After finding no weapon on Noel, and before anyone read a Miranda warning to Noel, Officer Mendoza asked Noel where the gun was

5

located. Noel told Officer Mendoza that he had thrown it in a dumpster at an apartment complex. Officer Mendoza testified that he asked Noel questions regarding the gun's location because he "want[ed] to secure the weapon, secure evidence," and because "kids could get it, someone could be hurt." Officer Mendoza explained that the apartment complex where Noel said he disposed of the gun housed many children and there was a school and another apartment complex in close proximity. According to Officer Mendoza, he did not ask Noel any questions about the murder.

When the officers from the Conroe Police Department arrived, Officer Mendoza told them that Noel had a warrant and that Noel told Mendoza that he knew where the gun was located. The Conroe officers asked Mendoza to talk to Noel and find out if Noel would take them to the gun. Officer Mendoza then asked Noel to take them to the gun and Noel agreed to do so. Noel directed Officers Mendoza and Bond to the gun's location. Officer Mendoza testified that other than the statements about the location of the gun, the only other statements Noel made at that point were not in response to any questioning, and Noel told Officer Mendoza that he did what he did because someone was trying to kill him. Once the gun was located, the Conroe Police Department took control over the matter.

6

Detective Jason Waller with the Conroe Police Department, the officer who had originally issued the murder warrant for Noel, also testified at the suppression hearing. Detective Waller explained that prior to Noel turning himself in, Detective Waller had gone to an apartment complex to help process a burned vehicle which was reportedly used by the shooter during Pavon's murder. Detective Waller drove to the Houston substation once he was notified that Noel had turned himself in. Detective Waller testified that he learned that Noel told Officers Mendoza and Bond where Noel had discarded the weapon. Detective Waller asked if Noel could take them to the gun "[f]or the safety of the general public so that someone doesn't come across it, . . . have it in their possession illegally or commit a crime with it." Waller explained at the hearing that he did not read any rights to Noel or ask him anything else regarding the murder, and that Waller spoke to Noel with the aid of Officer Mendoza who acted as an interpreter. After Noel directed the officers to the apartment complex and dumpster, Detective Waller climbed into the dumpster, located the gun, secured it, and transported it back to the police department. Detective Waller took custody of Noel and transported him back to Conroe but did not question Noel during the drive.  Noel did not make any statement, did not ask for an attorney, and did not state that he did not want to talk further. Once at the

7

Conroe Police Department, Detective Waller released Noel to Detective Perez for an interview.

Detective Elias Perez with the Conroe Police Department testified that Noel was in custody at the time of the interview. Perez informed Noel they were going into a special room to do an interview, and Noel voluntarily entered the interview room. Detective Perez explained that once they were in the interview room, Perez removed Noel's handcuffs and read Noel his statutory rights. Detective Perez read from a card that contained the statutory rights, but instead of reading the side of the card with the Spanish version of the rights, Detective Perez translated the English portion of the card into Spanish when he read the rights to Noel. Detective Perez testified that he considers himself a fluent Spanish speaker. A written translation of the rights as read by Detective Perez in the interview room was transcribed and admitted into evidence at the hearing. Detective Perez testified that Noel stated either with a "yes" or a nod that he understood each right, Noel never requested a lawyer, and Noel did not tell Detective Perez that he wanted to remain silent or that he wanted to end the interview. Detective Perez testified that he felt like Noel understood Perez during the interview and Perez understood what Noel said during the interview. Detective Perez concluded the interview after approximately two hours.

Detective Perez admitted that in translating the statutory rights from English into Spanish, with respect to the right to have a lawyer appointed if unable to afford one, his translation was "a little odd" because he used the word "apuntar" which means "to point[,]" but that in the past he has used it to mean "to appoint" and others had understood it. He also admitted that the Spanish word he used for "revoke" was "resumir", and that it was "not the word that I thought I was going to say[]" and that it did not make any sense in the context in which Perez used the word. Detective Perez also acknowledged that the translation of the rights Perez gave to Noel was different than the wording of the Spanish version printed on the other side of the card.

Dr. Gabriela Baeza Ventura, a professor of Spanish at the University of Houston and editor of Spanish literature, testified that she reviewed the video recording of Noel's interview and the transcript of Officer Perez's translation. Dr. Baeza Ventura testified that based on the recording of the interview she did not consider Detective Perez a fluent Spanish speaker. According to Dr. Baeza Ventura, what was translated to Noel regarding his right to have an attorney appointed did not make sense because Detective Perez used the word "apuntar[,]" which means "[t]o point out, to signal out" or "to aim[,]" and not to appoint someone. She agreed that even if someone could understand "apuntar" to mean

9

appoint, that when considered within the context of the sentence Detective Perez translated, it would not make sense and it would not convey the meaning that the warning should convey because "it does not clearly indicate that the person has a right to have . . . a lawyer appointed for him." Instead, as explained by Dr. Baeza Ventura, it erroneously says "that a lawyer can be pointed to you, can be - - can write it down for you, and then so that you can give your side[.]" Based on Noel's response to his rights as read by Detective Perez, Dr. Baeza Ventura believed that Noel did not understand what was being communicated to him, that the correct meaning of all five statutory warnings was not effectively communicated to Noel, and that Noel did not understand the importance of the statutory warnings.

Noel testified that he watched the video interview and that Detective Perez did not inform him of his right to have a lawyer appointed to him if he was not able to afford one. Noel explained that had he been informed and understood that right, it would have been a factor in his decision whether to continue the interview. Noel testified that at the time Detective Perez translated the statutory rights, Noel did not understand those rights.

At the conclusion of the suppression hearing, the trial court heard arguments from the attorneys on behalf of both parties. The State argued that the statements made by Noel at the Houston substation should not be suppressed. In particular, the

10

State argued that the statements Noel made when he first entered the substation and when he made a hand gesture and statement about "Conroe" were noncustodial in nature. Additionally, the State argued that the statements and questions about the location of the gun would fit within the public safety exception as outlined in *New York v. Quarles*.[1] As to the statements and confession made by Noel after the Conroe Police attempted to give him a "Miranda warning[,]" the State argued the warning read to Noel "substantially complie[d]" with the required Miranda warning. Noel argued at the suppression hearing that the Miranda warning was so deficient that, as a consequence, Noel did not understand his rights.

Both Noel and the State indicate in their briefs on appeal that the trial court ruled that the statements made at the Houston substation relating to the location of the gun were admissible under the public safety exception. The trial court also ruled that the statements made by Noel "where the accused allegedly held out his hand making the sign of holding a pistol, and shooting a pistol, and saying the word 'Conroe' [were] not subject to custodial interrogation. I find that that is not suppressible." The trial court then stated it would suppress "the confession made at the Conroe Police Department, I'm finding that the Miranda warnings given at the Conroe Police Department by Detective Perez were fatally defective. Those Miranda warnings did not . . . substantially comply with 38.22 [of] the Texas

---

[1]467 U.S. 649, 657 (1984).

Criminal Code of Procedure." The trial court signed an order indicating the first motion to suppress was "granted[.]" However, the reporter's record indicates that the first motion to suppress was granted in part and denied in part.

Evidence and Testimony at Trial

After the trial court made its rulings on the motions to suppress, the trial continued and the State called its witnesses. The first witness, Officer Atherton, with the Conroe Police Department, was dispatched on October 7, 2012, to a home where there had been a reported shooting, and when he arrived he found a body on the floor in the house. Atherton requested dispatch to call EMS and EMS determined that the victim, later identified as Oscar Pavon (Pavon), was deceased. Four people were on the porch of the house when Atherton arrived at the scene of the shooting, and each person was interviewed by other officers.

Investigator Horne testified that he was called to the scene of the shooting and that he saw Pavon lying face up inside a house. Pavon had suffered multiple gunshot wounds. Horne processed the scene of the shooting and then left to go to another location to process a vehicle with extensive fire damage that was reportedly used by the murder suspect to flee the scene.

Two witnesses testified that they saw Noel arguing and fighting with Pavon on the night of the shooting. Another eyewitness testified that he saw Noel with a

12

gun, that he saw Noel put a clip in the gun and shoot Pavon, and that he ran away after he saw Noel reload.

The State also called Detective Waller, a detective with the Conroe Police Department, who testified that he was the lead investigator who investigated the shooting and death of Pavon. Detective Waller testified that he found shell casings in a bathtub where Noel was living and that the casings matched the same caliber shell casings found at the scene of the shooting. Waller was also called out to a vehicle that matched the description of the vehicle the shooter reportedly drove on the night of the shooting. By the time Waller arrived to examine the vehicle, the vehicle was damaged and it had been burned. However, Waller determined that the vehicle was registered to Maria Gomez, who was later identified as Noel's girlfriend. Before he could locate Noel, Waller received a call from Houston Police informing Waller that Noel had turned himself in at a substation. Waller testified that when he went to the substation, he did not question Noel about the murder. However, according to Detective Waller, he asked Noel about the location of the gun because Waller had public safety concerns of the gun "fall[ing] into the wrong hands." Noel agreed to take Waller to the weapon. Waller testified that Noel led them to a dumpster where the gun was recovered. Waller also recovered a

Styrofoam cup with live rounds of ammunition and a white T-shirt with blood stains on it from the dumpster.

Thereafter, the State called Dr. Sparks Veasey, a forensic pathologist, who testified among other things that he completed the autopsy report on Pavon. According to Veasey, Pavon died of multiple gunshot wounds and the manner of death was homicide. Thereafter, the State rested its case.

The defense called Noel to testify. Noel began his testimony on the afternoon of November 6, 2014. According to Noel, he had an argument with Pavon and during the argument Pavon threatened to kill Noel. Noel explained to the jury that when Noel pulled out the gun he did so to show Pavon that he could defend himself. At some point during his testimony, when Noel was asked at trial whether the victim was deceased, Noel responded, "I'm very sorry." The court then adjourned for the day without Noel completing his testimony. When the trial continued the next day, Noel announced to the trial court that he wanted to change his plea to "guilty."

Noel then changed his plea from "not guilty" to a plea of "guilty." The record reflects he did so in open court with the assistance of counsel and with the use of an interpreter. Noel stated that he decided to change his plea to guilty because he was guilty, and that he was doing so freely and voluntarily. He also

acknowledged on the record that he understood that probation was not an available sentence option and that he could be sentenced to life in prison. Based on his plea and the paperwork admitted,[2] the trial court found Noel guilty of murder and ordered a pre-sentencing investigation prior to the punishment hearing. The trial court sentenced Noel to life in prison. The trial court stated on the record that the trial court's certification would be reformed to reflect: "It is not a plea bargain case and the defendant has the right of appeal as to punishment only." Defense counsel stated on the record that Noel understood. Noel did not file a motion for new trial, but he timely filed a notice of appeal.

ISSUES PRESENTED

In his first issue on appeal, Noel contends the trial court erred in limiting his right of appeal only to errors in the punishment proceeding, and that by limiting his right to appeal only to matters relating to punishment, the trial court is incorrectly

---

[2]Noel signed a sworn judicial confession in which he acknowledged that he understood the admonitions from the trial court and that he was aware of the consequences of his plea. One portion of his plea document is styled "Waivers, Consent, Judicial Confession & Plea Agreement," and therein it states that the defendant "waives and abandons all motions, pleadings and objections made before the entry of the plea" and that he "agrees to plead guilty to the above specified offense(s) [i.e. murder], true to enhancement allegations, if any, judicially confess, waive any right to appeal this case[.]" The trial judge signed the document, affirming that the trial court "consent[ed] to and approve[d] the waivers." It appears Noel also signed a portion of the document and then Noel refused to sign beside the separate paragraph of the plea document that expressly dealt with his waiver of his right to appeal.

foreclosing his ability to challenge that portion of the first motion to suppress that the trial court denied. In his second issue, Noel contends that the trial court violated Article 28.01 of the Texas Code of Criminal Procedure in refusing to hear Noel's second motion to suppress which was filed on November 4, 2013, and in determining it was untimely. According to Noel, a motion to suppress evidence is an issue of "constitutional dimensions" and he should be "afforded a hearing" despite his failure to comply with the trial court's pretrial docket control order.

## DISCUSSION

In his first issue, Noel argues that the trial court's action in limiting his appeal to punishment errors violated Article 44.02 of the Texas Code of Criminal Procedure[3] and Rule 25.2 of the Texas Rules of Appellate Procedure. Noel contends that by limiting his right to appeal only to matters relating to punishment,

---

[3]Article 44.02 provides the following:

A defendant in any criminal action has the right of appeal under the rules hereinafter prescribed, provided, however, before the defendant who has been convicted upon either his plea of guilty or plea of nolo contendere before the court and the court, upon the election of the defendant, assesses punishment and the punishment does not exceed the punishment recommended by the prosecutor and agreed to by the defendant and his attorney may prosecute his appeal, he must have permission of the trial court, except on those matters which have been raised by written motion filed prior to trial. This article in no way affects appeals pursuant to Article 44.17 of this chapter.

Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006).

16

the trial court is incorrectly foreclosing his ability to challenge that portion of the first motion to suppress that the trial court denied.

According to Noel, because he pleaded guilty without a plea bargain agreement, the trial court's certification stating he has the right to appeal but then limiting him to an appeal regarding punishment denies him the right to appeal the ruling of the trial court on the first motion to suppress. Furthermore, Noel argues that because Rule 25.2(a)(2) only "applies to charge-bargain cases, Appellant has the right to appeal the Court's ruling denying part of his suppression motion." The State contends that Noel knowingly and intentionally waived any right to appeal (except as to punishment) and he waived any right to challenge the ruling of the trial court relating to either motion to suppress.

An appellate court is obligated to review the record to ascertain whether the trial court's certification is defective. *Dears v. State*, 154 S.W.3d 610, 615 (Tex. Crim. App. 2005).

Pursuant to Rule 25.2(a)(2):

A defendant in a criminal case has the right of appeal under Code of Criminal Procedure article 44.02 and these rules. The trial court shall enter a certification of the defendant's right of appeal each time it enters a judgment of guilt or other appealable order. In *a plea bargain case*—that is, a case in which a defendant's plea was guilty or nolo contendere and the punishment did not exceed the punishment recommended by the prosecutor and agreed to by the defendant—a defendant may appeal only:

(A) those matters that were raised by written motion filed and ruled on before trial, or

(B) after getting the trial court's permission to appeal.

Tex. R. App. P. 25.2(a)(2) (emphasis added). The limitation of a defendant's right to an appeal as stated in Rule 25.2(a)(2) expressly applies to "a plea bargain case[.]" *Dears*, 154 S.W.3d at 613. After reviewing the record, we conclude that Noel's guilty plea was not the product of a plea bargain, and nothing in Rule 25.2(a)(2) limits Noel's right to appeal.

It has long been recognized that neither the United States Constitution nor the Texas Constitution require a state to provide appellate review of criminal convictions, and that right is only as provided by the legislature. *Griffin v. State*, 145 S.W.3d 645, 646 (Tex. Crim. App. 2004) (citing *McKane v. Durston*, 153 U.S. 684, 687 (1894); *Phynes v. State*, 828 S.W.2d 1, 2 (Tex. Crim. App. 1992)). A defendant's right to an appeal is granted by statute. *Id.*; *see* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006); Tex. R. App. P. 25.2. Nevertheless, even though a right to appeal may exist by statute, a defendant may waive any rights secured to him by law, even his right to an appeal. Tex. Code Crim. Proc. Ann. art. 1.14 (West 2005); *Ex parte Broadway*, 301 S.W.3d 694, 697 (Tex. Crim. App. 2009). A voluntary, knowing, and intelligent waiver will preclude a defendant from appealing without the consent of the trial court. *Id.* (citing *Monreal v. State*, 99

18

S.W.3d 615, 617 (Tex. Crim. App. 2003)). The Court of Criminal Appeals has explained the reviewing court should examine the circumstances surrounding the waiver. For example, in *Ex parte Delaney*, 207 S.W.3d 794, 799 (Tex. Crim. App. 2006), the Court of Criminal Appeals held that a pretrial or presentencing waiver of the right to appeal in a non-plea-bargain case was invalid and could not be voluntarily, knowingly, and intelligently made when the consequences of the waiver were unknown to the defendant. The emphasis in *Delaney* was the absence of a bargained-for waiver in exchange for an agreed-upon sentence. *Broadway*, 301 S.W.3d at 697 n.7.

In *Broadway*, Broadway filed an application for writs of habeas corpus alleging ineffective assistance of counsel on the grounds that his trial counsel failed to inform him of his right to appeal his sentence and that they allowed him to sign a waiver of appeal before sentencing. *Id.* at 696. At trial Broadway entered an open plea after declining the State's plea-bargain offer, which offered a minimum 25-year sentence. *Id.* Broadway declined the State's offer and entered the open plea, hoping that the judge would consider deferred adjudication community supervision with drug treatment. *Id.* In order to be able to seek deferred adjudication, Broadway waived his right to have the jury assess punishment, and

Broadway convinced the State to consent to the waiver of the jury trial[4] in exchange for Broadway's waiver of his right to appeal. Accordingly, the Court concluded that Broadway voluntarily, knowingly, and intelligently waived his right to appeal even though it was an open plea and there was no agreement on punishment, because there was consideration given by the State for the waiver. *Id*. at 699.

Subsequently, in *Washington v. State*, the Court of Criminal Appeals applied the *Delaney* rationale to invalidate a waiver where the defendant waived his right to appeal before sentencing and without an agreement as to punishment, and where the record did not confirm that the State gave any consideration for the waiver. 363 S.W.3d 589, 589-90 (Tex. Crim. App. 2012) (citing *Delaney*, 207 S.W.3d at 799); *cf. Blanco v. State*, 18 S.W.3d 218, 219-20 (Tex. Crim. App. 2000) (waiver of appeal enforceable when executed after conviction, but before sentencing, in exchange for a recommended sentence). In summary, presentence waivers of the right to appeal will be enforceable only if they are part of a plea bargain or when the State has given some consideration for the waiver. *See Broadway*, 301 S.W.3d at 697-99.

---

[4]Article 1.13 of the Texas Code of Criminal Procedure provides that a defendant may not unilaterally waive his right to a jury trial and both the court and the State must consent. *See* Tex. Code Crim. Proc. Ann. art. 1.13 (West Supp. 2014).

The State contends that the documents Noel signed "stated that the plea agreement included a waiver of appeal, the trial court certified that the appellant waived his right to appeal, and the appellant acquiesced in the revision of the certification of the right to appeal." The State also argues that, regardless of whether Noel effectively waived his right to appeal, he independently waived and abandoned all pretrial motions made before the entry of the plea. Noel signed and acknowledged in a separate wavier that he "waives and abandons all motions . . . made before the entry of the plea." *See supra* note 2. But we note that on the signature line for the "Waiver of Right to Appeal" portion of the document titled "Waivers, Consent, Judicial Confession & Plea Agreement[,]" only Noel's first name appears on the signature line and it is scratched out. Furthermore, on the record before us, there is no indication that the State expressly gave any consideration for Noel's waivers. Applying the *Delaney* rationale to the record before us, we cannot conclude that Noel voluntarily, knowingly, or intelligently waived his right to an appeal or that he waived his right to challenge the ruling of the trial court pertaining to the motions to suppress. His guilty plea was an open plea, the record does not demonstrate there was any consideration given by the State in exchange for Noel's waivers, and the record indicated Noel refused to sign the paragraph pertaining to his waiver of the right to appeal.

21

Furthermore, the trial court certified the appeal as "not a plea-bargain case, and the defendant has a right of appeal." Because Noel pleaded guilty under an open plea with no agreement as to punishment, and there was no consideration given by the State for Noel's waiver, the trial judge's certification that Noel has a right of appeal is supported by the record. *See Washington*, 363 S.W.3d at 589-90. We conclude that the trial judge's additional handwritten notation of "as to punishment only" at the end of the typed statement that the case "is not a plea-bargain case, and the defendant has a right of appeal," does not restrict Noel's right to appeal. Therefore, the trial court's certification is not defective. *Cf. Dears*, 154 S.W.3d at 613-15 (The certification was defective where it indicated defendant entered into a plea bargain and had no right of appeal but the record reflected defendant actually did not plead guilty under a plea agreement and therefore the defendant had a right to appeal.). Any error resulting from the handwritten notation is harmless because it did not affect Noel's substantial rights. Therefore, we consider the merits of Noel's second issue.

On appeal, Noel has specified and briefed an alleged trial court error that pertains solely to the second motion to suppress. To the extent Noel intended to raise a complaint on appeal about the trial court's rulings on the first motion to suppress, which was granted in part and denied in part, Noel provides no citations

22

to the record and no specific argument to explain what part, if any, of the ruling on the first motion to suppress was erroneous, and he provides no factual or legal analysis pertaining thereto. Therefore, we hold he has inadequately identified and inadequately briefed a complaint about the trial court's ruling on the first motion to suppress. *See* Tex. R. App. P. 38.1(i); *Cardenas v. State*, 30 S.W.3d 384, 393 (Tex. Crim. App. 2000).

Noel states in his second issue on appeal that the trial court erred in not hearing the second motion to suppress.[5] With respect to the trial court's ruling on the second motion to suppress, we conclude the trial court's refusal to hear the second motion to suppress was proper because the second motion was untimely filed. *See Writt v. State*, 541 S.W.2d 424, 425-26 (Tex. Crim. App. 1976) (A motion to suppress filed on the day trial begins is not timely and the trial court does not err in denying the motion.). We reject Noel's argument that he should be afforded a hearing even though he failed to comply with the court's pretrial order under Article 28.01 of the Texas Code of Criminal Procedure because the motion to suppress evidence is an issue of "constitutional dimensions[.]" *See Ackenback v.*

[5]Noel also makes no argument about the merits of his second motion to suppress, nor does he indicate how the ruling of the trial court in denying a hearing on the untimely-filed second motion to suppress resulted in the adjudication of his guilt. And his guilty plea does not appear to be temporally connected to the trial court's rulings on the motions to suppress, nor is it necessarily dependent upon the admission of evidence that Noel described in the motions to suppress.

*State*, 794 S.W.2d 567, 573 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) ("Even if a pretrial motion to suppress is called to the attention of the trial court, no error is presented if the trial court, in its discretion, declines to hear the same. While the court is not required to hear any pretrial motion to suppress evidence the accused retains his right to raise any appropriate objection at trial.").[6] Finding no reversible error, we overrule Noel's second issue.

We affirm the trial court's judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 21, 2014
Opinion Delivered March 4, 2015
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

---

[6]During the guilt-innocence phase of the trial, Noel made no objection to testimony regarding the statements Noel made as to the location of the gun, nor did he object to the admission of the gun or other physical evidence offered into evidence by the State.

24

Concurring Opinion

I join the judgment of the Court. However, I do not agree that the appellant's brief raises any issue on appeal regarding the trial court's ruling on the appellant's first motion to suppress. Consequently, in my opinion, we need not address what in my view is at most unassigned error.

The majority suggests that the appellant raised a complaint regarding a ruling on the first motion to suppress when in my opinion he did not. The majority then resolves the issue that it asserts the appellant raised by indicating the appellant did not properly brief the issue. It does so, however, without first giving the appellant an opportunity to cure the purported deficiencies in his brief. I cannot join that part of the Court's opinion. Nevertheless, with respect to the two issues that the appellant did raise in his brief, I agree that the Court should overrule the appellant's two issues for the reasons explained in the opinion.

The majority reads the appellant's brief as assigning error to the trial court's ruling on the appellant's first motion to suppress. It then resolves the purported error by concluding that the appellant inadequately briefed the issue. It reaches that conclusion without having first notified the appellant's attorney that his brief was deficient due to his purported failure to comply with the provisions of Rule 38 of the Texas Rules of Appellate Procedure, a rule which requires that the appellant's

25

brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i).

In my opinion, Rule 44.3 of the Texas Rules of Appellate Procedure applies to situations where the brief a party filed violates the requirements of Rule 38. Under Rule 44.3, we "must not affirm or reverse a judgment or dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities." Tex. R. App. P. 44.3. The Court gave the appellant no such time in this case, which in my opinion constitutes error. *Compare Inpetco, Inc. v. Tex. Am. Bank/Houston*, *N.A.*, 729 S.W.2d 300, 300 (Tex. 1987) (per curiam) (disapproving of the intermediate appeals court's holding that the appellant waived its point of error on the basis of a briefing inadequacy "without first ordering [the appellant] to rebrief"), *with Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 285 (Tex. 1994) (holding that intermediate courts have some discretion in ordering rebriefing to balance the twin objectives of a liberal and just construction of procedural rules and the prompt and efficient resolution of appeals). In my view, the majority can promptly resolve this appeal even if it orders the appellant's attorney to amend the appellant's brief. In my opinion, the Court errs by failing to give the appellant an opportunity to amend his brief before it disposes of the issue that it asserts he has

raised.

_____
HOLLIS HORTON
Justice

Concurrence Delivered
March 4, 2015

27